SUTER, J.A.D.
*6 Defendant C.V.[1] appeals the May 6, 2016 order that denied her request to vacate a final restraining order (FRO) entered in 2004 under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, and the June 10, 2016 order that denied reconsideration. Defendant's motion to dissolve the FRO was denied because it did not include a transcript of the underlying 2004 FRO hearing, even though the audio record of that proceeding apparently is not capable of transcription. We reverse and remand for the Family Part to verify the unavailability of the audio record of the FRO hearing, to determine whether defendant has shown prima facie evidence of changed circumstances to dissolve the FRO, and unless she has not met this burden, to reconstruct the record of the FRO hearing consistent with the procedures of this opinion.
*7 I
The parties divorced in March 2004 after a ten-year marriage. Of their three children, one is emancipated, one is in college and one is a teenager, who resides with defendant. Plaintiff moved to Florida and remarried in 2014.
In August 2004, plaintiff obtained a temporary restraining order (TRO) under the Act against defendant, alleging as a predicate offense that defendant was harassing him.[2] Plaintiff's complaint stated that defendant *417 made "repeated calls to [plaintiff] and others" that were "harassing and threatening," causing him fear. She repeatedly called plaintiff's girlfriend.
Plaintiff also claimed, in the original request for a restraining order, that defendant had a history of committing acts of domestic violence against him. He accused defendant of coming into the house and taking items belonging to the children; asserting in vulgar language her claim to ownership of the house; demanding that plaintiff move into the laundry room; stabbing him in the arm; running after him with two butcher knives; locking him out of the house in cold weather when he was scheduled for tests on his heart; keeping him up by flashing lights; chasing and hitting him with a battery charger while disparaging him with coarse language; threatening to run her car off the road while he was a passenger; hitting him in the head with a tripod; locking him out of the house with the cat; and kicking him in the ribs, legs, and chest, spitting in his face, and calling him a "f**king loser" and "piece of s**t."
The FRO entered on August 18, 2004 by Judge John B. Dangler[3] provided that defendant committed "an act of domestic violence." It restrained defendant from contacting plaintiff's girlfriend, her employer, and plaintiff's brother and sister-in-law. Her *8 communication with plaintiff was to be limited to non-harassing/non-abusive parenting issues concerning the children. The court also ordered defendant to have a mental health assessment. Defendant did not appeal the FRO.
In March 2016, defendant made application pursuant to N.J.S.A. 2C:25-29(d) to dissolve the FRO, alleging a "substantial change of circumstances" since its entry nearly twelve years earlier in 2004. In her supporting certification, defendant alleged the FRO should be dissolved to permit the parties to mediate a new parenting time schedule. She alleged the FRO posed a hardship to her in obtaining other employment. Other changed circumstances since 2004 included plaintiff's move to Florida and the support of his former girlfriend to vacate the FRO.
Defendant claimed that plaintiff no longer feared her. She alleged that in 2006, they shared a hotel room for a week with their children while at a tournament in Florida. They also entered into a real estate joint venture. According to defendant, plaintiff attended her fortieth birthday party in 2008 at his restaurant, and he stayed with the children and her parents in Hilton Head. She claimed he made sexual advances to her. With respect to his current wife, defendant claims they communicated cordially at least until 2014 and 2015 when defendant filed post-judgment matrimonial orders to show cause, accusing plaintiff of taking their teenaged son to Florida for spring break and not timely returning him.
Defendant's application to dissolve the FRO did not include the transcript of the 2004 FRO hearing. By way of explanation, defendant attached a copy of an e-mail from the Morris County Superior Court Operations Division that stated, "neither tape is working, so there is nothing for you to listen to." A later e-mail reported that "it was discovered that one of the tapes was blank," but there was a second half with the judge's decision. A May 4, 2016 certification from a tape transcript processing employee in the Morris County vicinage stated that the audio tapes of the 2004 FRO hearing were blank.
*9 Plaintiff "strongly" opposed the dissolution of the FRO and filed a cross-motion *418 for attorney's fees.[4] In his certification, plaintiff alleged defendant was "violent, irrational, and mentally unstable." He remained "extremely fearful of [her] and very concerned about [his] safety and security" should the FRO be dissolved. He denied sharing a hotel room with defendant and the children, hosting a birthday party for her, staying at Hilton Head with her parents, or making sexual advances. He emphasized that the real estate investment in 2006 was conducted through an attorney. Plaintiff claimed that in 2014, defendant called the former spouse of his current wife (Rhonda) and made spurious accusations concerning his interactions with the children and his relationship with Rhonda. Plaintiff also rejected any proposal to mediate parenting time issues. The parties had been in court in 2014, 2015 and 2016 on multiple post-judgment matrimonial motions concerning parenting time with their teenaged son and other related matters.
In an order dated May 6, 2016, the Family Part denied defendant's application to dissolve the FRO because it did not include a copy of the 2004 FRO hearing transcript. The court based its ruling on the plain language in N.J.S.A. 2C:25-29(d), which requires a "complete record of the hearing" before dissolving or modifying any final order. The Family Part also expressly relied on this court's decision in Kanaszka v. Kunen, 313 N.J. Super. 600, 713 A.2d 565 (App. Div. 1998), which held:
In cases where the motion judge did not enter the final restraining order, we hold the "complete record" requirement of the statute includes, at a minimum, all pleadings and orders, the court file, and a complete transcript of the final restraining order hearing. Without the ability to review the transcript, the motion judge is unable to properly evaluate the application for dismissal.
[ Id. at 606, 713 A.2d 565.]
Noting that defendant had the burden of proof and the primary goal of the Act was to protect victims of domestic violence, the Family Part ruled that defendant's application had a "procedurally *10 ... fatal defect" without the transcript. The court dismissed defendant's application without prejudice, concluding it was "prohibited" from determining the merits of the application without the transcript of the FRO hearing.
In an order dated June 10, 2016, the court denied defendant's application for reconsideration. In its written statement of reasons, the court noted defendant did not allege any new facts warranting reconsideration. Without the transcript, it had "almost no record on which to rely" in analyzing whether plaintiff had an objective fear of defendant or whether any of the factors set forth in Carfagno v. Carfagno,[5] for determining if good cause had been shown, were present. The court stated that the FRO did not "state the underlying predicate act" and certifications from the parties did not "illuminate details of the underlying incident of domestic violence."
By weighing the various interests, the Family Part rejected defendant's contention, both facially and as applied, that she was deprived of due process by being "unable to proceed past the pleading stage." Plaintiff's private interest in retaining the FRO weighed more heavily than defendant's *419 interest in dissolving the FRO because the necessity for the transcript was "to inform any future judge of the underlying events." The risk of erroneous deprivation inured to both parties, but the lack of a transcript could "severely prejudice ... [p]laintiff" because the domestic violence evidence might be stale or witnesses might be lost. Given the State's interest in protecting its citizens who are victims of domestic violence, the Act provided only "narrow circumstances" to dissolve the restraints. The Family Part did not address defendant's request to reconstruct the FRO hearing record, which she raised for the first time in her motion for reconsideration. *11 On appeal, defendant contends the court erred by not allowing the 2004 FRO record to be reconstructed so that her application to dissolve the FRO could be heard. At the oral argument of the appeal, defendant's counsel suggested a two-step hearing process where the court would first reconstruct the record of the FRO and then would address the merits of the application to dismiss the restraints. Plaintiff argues that the trial court was correct to deny the application because a transcript was required. Plaintiff suggests that defendant's relief must come from the Legislature by way of an amendment of the Act.
Under these circumstances, we conclude that fundamental fairness and due process of law require the Family Part to confer with the parties and reconstruct the record of the FRO hearing. We thus reverse and remand for proceedings consistent with this opinion.
II
We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197, 51 A.3d 161 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 343, 990 A.2d 1097 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998) ). We are mindful of the deference owed to determinations made by family judges who hear domestic violence cases. See Cesare, 154 N.J. at 411-12, 713 A.2d 390. "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974) ). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26, 93 A.3d 306 (2014) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
*12 The Legislature intended that the Act "assure the victims of domestic violence the maximum protection from abuse the law can provide." State v. Brown, 394 N.J. Super. 492, 504, 927 A.2d 569 (App. Div. 2007) (quoting N.J.S.A. 2C:25-18 ).
It is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public.
[ N.J.S.A. 2C:25-18.]
The entry of a domestic violence restraining order requires a trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-26, 903 A.2d 446 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, *420 that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125, 903 A.2d 446. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402, 713 A.2d 390 ).
Next, the court must determine whether a restraining order is required to protect the party seeking restraints from future acts or threats of violence. Silver, 387 N.J. Super. at 126-27, 903 A.2d 446. That means, "there [must] be a finding that 'relief is necessary to prevent further abuse.' " J.D. v. M.D.F., 207 N.J. 458, 476, 25 A.3d 1045 (2011) (quoting N.J.S.A. 2C:25-29(b) ).
A final restraining order under the Act can be modified or dissolved only by court order upon a showing of good cause. T.M.S. v. W.C.P., 450 N.J. Super. at 502, 163 A.3d 929. N.J.S.A. 2C:25-29(d) provides,
Upon good cause shown, any final order may be dissolved or modified upon application to the Family Part of the Chancery Division of the Superior Court, but only if the judge who dissolves or modifies the order is the same judge who entered the order, or has available a complete record of the hearing or hearings on which the order was based.
[ N.J.S.A. 2C:25-29(d).]
The party asking to modify or dissolve the FRO has the "burden to make a prima facie showing [that] good cause exists for *13 dissolution of the restraining order prior to the judge fully considering the application for dismissal." Kanaszka, 313 N.J. Super. at 608, 713 A.2d 565. That party must show "substantial changes in the circumstances" from what existed at the final hearing for the court to "entertain the application for dismissal" in order that the victim is not "forced to repeatedly relitigate issues with the perpetrator, as that itself can constitute a form of abusive and controlling behavior." Ibid. A plenary hearing should only be ordered where this burden is met and there are "facts in dispute material to a resolution of the motion .... Conclusory allegations should be disregarded." Ibid. (citing Lepis v. Lepis, 83 N.J. 139, 159, 416 A.2d 45 (1980) ).
In evaluating whether good cause has been shown under the statute to modify or dissolve a final order, a court is to consider the non-exclusive list of factors set forth in Carfagno, 288 N.J. Super. at 435, 672 A.2d 751. These include,
(1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
In Kanaszka, we held that the parties' history of domestic violence is to be considered to evaluate the victim's continued fear of the perpetrator and that this "may include exploration of incidents that were not testified to at the final hearing." 313 N.J. Super. at 607, 713 A.2d 565.
The parties in Kanaszka had a dating relationship when the plaintiff applied for a restraining order based on the defendant's *421 "assaultive and threatening conduct." Id. at 604, 713 A.2d 565. Two years later, the defendant filed a motion to dissolve the restraining order because he wanted to pursue a career in law enforcement, asserting he could not do so because of the FRO. There were no *14 violations of the FRO but the plaintiff opposed the motion, alleging she still had fear of the defendant and remained in counseling. She detailed the allegations of abuse.
The defendant's motion in Kanaszka did not include a transcript of the FRO hearing, although there was no indication that it was unavailable. In that context, we noted that the court "must carefully scrutinize the record and carefully consider the totality of the circumstances before removing the protective shield." Id. at 605, 713 A.2d 565. The parties disputed the nature of their relationship and provided conflicting accounts of the events that led the court to issue the FRO. In this light, we held that,
where the motion judge did not enter the final restraining order, ... the "complete record" requirement of the statute includes, at a minimum, all pleadings and orders, the court file, and a complete transcript of the final restraining order hearing. Without the ability to review the transcript, the motion judge is unable to properly evaluate the application for dismissal. Moreover, in view of the significant volume of cases handled by Family Part judges, even if the motion was heard by [the original judge], we believe it would be difficult for the judge to give due consideration to the motion without the benefit of a transcript, as more than [seventeen] months had elapsed since the final hearing. In most instances, the better practice is for a transcript to accompany the motion for dissolution of a final restraining order to enable the motion judge to fully understand the totality of the circumstances and dynamics of the relationship and application.
[ Id. at 606-07, 713 A.2d 565.]
We considered the defendant's failure to include the transcript as "fatal to his appeal," denying it without prejudice. We added that even with the full record, the Carfagno factors should be considered in determining whether the movant had shown a prima facie case of changed circumstances to dissolve the restraints.
Here, defendant contends the transcript cannot be produced at all. Defendant argues that the Family Part misconstrued our holding in Kanaszka as creating an absolute, inflexible rule, requiring an applicant seeking the dissolution or modification of a FRO to submit a transcript of the FRO hearing, regardless of whether such a transcript is not available through no fault of the applicant. According to defendant, such an approach not only denies her a right the Legislature expressly provided in N.J.S.A. 2C:25-29(d), but permanently bars her from obtaining any relief, *15 regardless of whether changes in circumstances warrant it. Defendant argues this outcome could have been avoided if the Family Part had reconstructed the record of the FRO hearing, as authorized under Rule 2:5-3(f).
Rule 2:5-3(f) is an appellate rule that provides "[i]f a verbatim record made of the proceedings has been lost, destroyed or is otherwise unavailable, the court or agency from which the appeal is taken shall supervise the reconstruction of the record. The reconstruction may be in the form of a statement of proceedings in lieu of a transcript." (Emphasis added). Defendant appeals orders from the 2016 "proceedings" that denied her motion to dismiss the FRO, but those records are not lost. Rule 2:5-3(f)'s reference to "proceedings" is not applicable to the 2004 FRO hearing record.
*422 That said, we agree that in other contexts, we have held due process requires a judge to reconstruct the record. In State v. Izaguirre, 272 N.J. Super. 51, 639 A.2d 343 (App. Div. 1994), the stenographic notes of a murder trial were inadvertently destroyed shortly after the trial. The trial judge developed a plan for reconstructing the record with the cooperation of both counsel. In Izaguirre, we held that where the record of the trial is needed for appeal or "other valid purpose" and has been lost accidentally, "it becomes the duty of the trial court as a matter of due process entitlement of the parties to reconstruct the record in a manner that, considering the actual circumstances, provides reasonable assurances of accuracy and completeness." Id. at 56, 639 A.2d 343 ; accord State v. Thompson, 405 N.J. Super. 163, 963 A.2d 884 (App. Div. 2009) ; State v. Bishop, 350 N.J. Super. 335, 795 A.2d 297 (App. Div. 2002) (stating it is the duty of the trial judge as a matter of due process to reconstruct the record in a manner sufficient to provide a reasonable assurance of accuracy and completeness); see also State v. Casimono, 298 N.J. Super. 22, 688 A.2d 1093 (App. Div. 1997) (where we were not assured of the accuracy or completeness of the transcript because the trial court reconstructed the record without input from the parties).
*16 Here, the trial court denied defendant's motion for reconsideration without considering the alternative approach we suggested in Izaguirre. By so doing, the Family Part did not give due consideration to defendant's due process rights. In fact, the court did not even mention defendants request to reconstruct the record in its statement of reasons, denying the motion for reconsideration. In addressing whether judges should reconstruct the record in this context, we are mindful of the Act's purpose to protect victims of domestic violence. We are equally aware of the potential for misuse of the judicial process when victims of domestic violence are required to appear in court or otherwise respond through counsel and the expenditure of attorney's fees associated with such a process. We also are acutely aware that the process of reconstructing the record can be an arduous one that is fraught with difficulties because witnesses or documents may no longer be available.
Of equal importance is the danger that one of the parties will use the opportunity as a means to relitigate the FRO hearing. However, we are satisfied that by including in the Act that an FRO can be dissolved or modified for good cause, the Legislature did not intend to close the courtroom doors to applicants forever merely because the court no longer has a record that can be used to transcribe the FRO proceedings. Due process requires reconstruction of the record in certain circumstances. To guide the courts when confronted with the absence of the transcript in this context, we set forth the following procedures.
Where the transcript is available but simply has not been included by the party seeking relief, we continue to subscribe to the approach adopted in Kanaszka. This omission is fatal and the application should be denied without prejudice to allow the applicant to cure this deficiency by obtaining and submitting a complete transcript of the FRO proceeding. However, if the moving party has documentation from the judiciary that the proceeding cannot be transcribed in whole or in part, the court must then determine if this problem was caused by the applicant. In this *17 regard, we do not consider the applicant here to be at fault merely because she did not appeal the FRO or request the transcript shortly after the hearing. The court must determine whether the transcript is *423 in fact completely unavailable or whether it may be retrievable through Court Smart.
If there is no audio recording to transcribe or if the recording has been corrupted, preventing its transcription in whole or in part, and the applicant was not the cause of this malfunction, the court must then determine if the applicant can produce evidence to establish a prima facie case that changed circumstances exist to modify or dissolve the FRO in the absence of a transcript. The court should also determine whether the judge who heard the FRO issued detailed findings in a statement of reasons, which would allow the court to conclude that the record is complete and that the moving party did not show prima facie evidence of changed circumstances to dissolve the restraints. The court file may have sufficient information to determine that the moving party has not met its burden of showing changed circumstances. Prima facie evidence includes consideration of the Carfagno factors.
If however, the court cannot assess whether to deny the application or is otherwise satisfied that, based on the record before it, the applicant presented a prima facie showing of changed circumstances, the court should reconstruct the record of the FRO hearing. If the parties are represented by counsel, they may be able to stipulate the core salient facts that formed the basis for the issuance of the FRO. The guiding principle is to produce a record that "provides reasonable assurances of accuracy and completeness." Izaguirre, 272 N.J. Super. at 57, 639 A.2d 343. If one or more of the parties is appearing pro se, the court should attempt to reconstruct the record by questioning the parties under oath to determine whether what occurred at the FRO hearing can be reasonably and reliably reconstructed. We leave to the discretion of the judge whether to permit pro se litigants to submit a written, sworn account of what occurred at the FRO hearing in *18 lieu of providing an oral account which can be transcribed and made available to us for appellate review.
Once the record of the FRO proceeding has been reconstructed, the court must determine whether the applicant has presented sufficient evidence to establish good cause to modify or dissolve the FRO. N.J.S.A. 2C:25-29(d). The Family Part judge retains the discretion to determine whether this determination requires a plenary hearing. As we made clear in Kanaszka, the applicant "has the burden to make a prima facie showing good cause exists for dissolution of the restraining order prior to the judge fully considering the application for dismissal." 313 N.J. Super. at 608, 713 A.2d 565 (emphasis added).
If the judge is satisfied that reconstruction of the record is not feasible, the judge must make specific findings describing the reasons for this conclusion. In such a case, we hold that where a party requesting to modify or dissolve a FRO has shown prima facie evidence of changed circumstances and where the audio record of the FRO hearing is no longer able to be transcribed, in whole or in part, without the fault of the moving party, the judge may conduct a plenary hearing to determine whether the party seeking modification or dissolution of the FRO is entitled to any relief.
Here, the record does not show that the Family Part judge confirmed the inability to produce a transcript of the FRO proceedings. We do not know whether Court Smart was available at that time. Because the court considered the absence of the transcript as procedurally fatal, it never determined if defendant can show a prima facie case of "good cause" under *424 N.J.S.A. 2C:25-29(d) without the transcript. If defendant cannot meet this burden under Carfagno factors, 288 N.J. Super. at 435, 672 A.2d 751, then reconstruction of the FRO record is not required.
Reversed and remanded to the Family Part for proceedings consistent with this opinion. We do not retain jurisdiction.

We use initials and pseudonyms throughout this opinion because the case involves domestic violence litigation. R. 1:38-3(d)(9).

It is not clear from the copy of the complaint included in the appendix whether plaintiff also alleged the predicate offenses of stalking and assault.

Judge Dangler retired on January 1, 2010.

The appendix does not include a dispositional order related to the cross-motion. We do not know if plaintiff was awarded attorney's fees.

288 N.J. Super. 424, 672 A.2d 751 (Ch. Div. 1995). This court has adopted the factors identified by the Chancery Division in Carfagno. See T.M.S. v. W.C.P., 450 N.J. Super. 499, 502, 163 A.3d 929 (App. Div. 2017).