# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0333-20

T.N.Q.,

    Plaintiff-Respondent,

v.

P.L., JR.,

    Defendant-Appellant.

_____

        Submitted April 28, 2021 – Decided May 27, 2021

        Before Judges Accurso and Enright.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FV-10-0123-21.

        Anthony J. Vecchio, attorney for appellant.

        Law Offices of Jonathan F. Marshall, attorneys for respondent (Jonathan F. Marshall, of counsel; Abraham N. Basch, on the brief).

PER CURIAM

Defendant P.L., Jr.[1] appeals from an August 27, 2020 final restraining order (FRO) entered in favor of plaintiff T.N.Q., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

The parties had an "on again, off again" relationship for approximately six years.  They started dating in 2012 and lived together for about five months between 2016 and 2017.  Plaintiff ended the relationship in 2017 because it "was a very toxic volatile relationship."  She explained "[t]here was a lot of emotional, mental, verbal and physical abuse," and the physical abuse involved defendant pushing her into a wall on "at least two" occasions and locking her in a guest room on "[a]t least three" occasions for a period lasting "[a]nywhere from twelve to eighteen hours or so."

According to plaintiff, from the time she broke off the relationship until she obtained a temporary restraining order (TRO) in August 2020, defendant texted "almost daily," telephoned, wrote Facebook messages to her, and sent items to her home address.  He also appeared at her residence uninvited and constantly told her how much he loved her and wanted another chance to be together.

---

[1] We use initials to protect the privacy of the individuals involved in this appeal. R. 1:38-3(d)(9).

A-0333-20

By February 2019, plaintiff texted defendant to say their relationship was over and if he showed up again at her home or continued texting or otherwise contacting her, the "police will 100 percent be involved.  Stop.  Thank you." Defendant did not stop.  As late as July and August 2020, he communicated with plaintiff to let her know he still wished to reconcile with her.  At the FRO hearing, plaintiff testified she wanted a restraining order because she feared for her safety, noting defendant possessed a firearm and had threatened her and her family.

Defendant testified that after plaintiff moved out of the parties' residence in 2017, the parties reconciled three times and that they were intimate during the periods of reconciliation.  He stated that while they "were in separate quarters," they "were . . . trying to progress as a relationship."  Defendant admitted the parties had an "on again-off again" relationship and in July and August 2020, he tried "to reconcile just another time, to go back on."  He denied trying to harass, annoy or threaten plaintiff and specifically denied pushing her against a wall or locking her in a room for extended hours.  However, he acknowledged he "failed to understand that [his] actions . . . made [plaintiff] feel uneasy or . . . consisted of any sort of harassment."

A-0333-20

The judge credited plaintiff's testimony and concluded defendant "did engage in a pattern of controlling behavior," and there was "absolutely no doubt in [the court's] mind that . . . defendant couldn't take no for an answer" when he attempted to reunite with plaintiff. Additionally, the judge found that although plaintiff reconciled with defendant after the parties physically separated, there were "periods of time during which they were not in . . . a reconciliation, that the defendant simply determined to control the situation." The judge concluded defendant was attempting to "control the plaintiff's behavior in order to conform to his objective, which was to have a relationship with the plaintiff." Further, the judge noted defendant's own testimony demonstrated that by 2019, the parties "had no relationship, yet the defendant continue[d] to harangue or . . . harass the plaintiff to get her to alter her behavior to conform with his expectations." Accordingly, the judge stated he had "no confidence . . . plaintiff can rely upon the defendant's present statement of intent to leave plaintiff alone." Finding the "best predictor of future performance is past performance," the court concluded plaintiff established "by a preponderance of evidence, and beyond, . . . both the predicate act and a need for a final restraining order." The judge added that plaintiff asserted a right to be left alone which was "not respected by this defendant."

4

On appeal, defendant argues the trial court erred in granting the FRO because plaintiff failed to establish the predicate act of harassment and did not prove an FRO was necessary for her protection. We disagree.

When determining whether to grant an FRO pursuant to the PDVA, the judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. [2C:25-19(a)] has occurred." Ibid. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1). Second, if the court finds a plaintiff has established, by a preponderance of evidence, that a defendant has committed one of the enumerated predicate acts under the PDVA, the issuance of an FRO does not inexorably follow such a finding. Instead, the judge must consider the need for restraints by engaging in a separate inquiry, which involves an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6). Silver, 387 N.J. Super. at 126-27.

A-0333-20

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare v. Cesare, 154 N.J. 394, 400 (1998).

Here, plaintiff alleged defendant committed the predicate acts of harassment. A person is guilty of harassment when, "with purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a)-(c).]

A-0333-20

Harassment requires that a defendant act with the purpose of harassing the victim. J.D., 207 N.J. at 486. A judge may use "[c]ommon sense and experience" when determining a defendant's intent. Hoffman, 149 N.J. at 577. The mere assertion that conduct is harassing is not sufficient. J.D., 207 N.J. at 484. Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487. "[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

Our review of a trial judge's factual findings is limited. Cesare, 154 N.J. at 411. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court fact-finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). On the other hand, we will review questions of law determined by the trial court de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

A-0333-20

Based on the record before us, we are convinced the evidence amply supports the trial court's finding that plaintiff established "both the predicate act and a need for a final restraining order" based on defendant's harassment of plaintiff. Indeed, the record reflects that long after the parties separated and experienced brief periods of reconciliation, defendant used a variety of methods to contact plaintiff, despite her repeated entreaties that he stop. These communications invaded her privacy and caused her annoyance, if not alarm, contrary to subsection (a) of N.J.S.A. 2C:33-4. As we have noted, "[a]nnoyance means to disturb, irritate, or bother." J.D., 207 N.J. at 477 (alteration in original) (quoting Hoffman, 149 N.J. at 580).

Further, the judge's determination that an FRO was needed to protect plaintiff finds support in the record. As the judge noted, plaintiff asserted her right to be left alone by defendant, yet defendant demonstrated time and again he would not respect her wish. The judge properly considered that defendant harassed plaintiff over a significant period of time, and his harassment continued well beyond any timeframe when the parties had reconciled. Indeed, the judge specifically found that after September 2019, defendant engaged in a "pattern of controlling behavior," "couldn't take no for an answer," and attempted to "control the plaintiff's behavior in order to conform to his objective, which was

8

to have a relationship with the plaintiff." Accordingly, the judge stated he had "no confidence" he or plaintiff could "rely upon the defendant's present statement of intent to leave plaintiff alone."

Given our deferential standard of review, as well as our review of the testimony offered by the parties, we perceive no basis to second-guess the judge's factual findings. Accordingly, his conclusion that plaintiff established the need for an FRO as a matter of law is unassailable.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION