# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1097-20

N.B.,

     Plaintiff-Respondent,

v.

M.C.,

     Defendant-Appellant.

_____

        Submitted September 15, 2021 - Decided November 22, 2021

        Before Judges Accurso and Enright.

        On appeal from the Superior Court of New Jersey,
        Chancery Division, Family Part, Morris County,
        Docket No. FV-14-0984-06.

        The Tormey Law Firm, attorneys for respondent
        (Brent DiMarco, on the brief).

        Respondent has not filed a brief.

PER CURIAM

     In this one-sided appeal, M.C. challenges the denial of his motion,

following a plenary hearing, to dissolve a final restraining order his ex-wife,

plaintiff N.B., obtained against him in 2006 pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35.  Defendant claims the court erred in finding he failed to establish good cause to dissolve the order based on its assessment of the Carfagno[1] factors.  Because defendant's argument amounts to nothing more than a quarrel with the judge's fact-finding, which he has provided us no basis to reject on this record, we affirm.

N.J.S.A. 2C:25-29(d), the statute that permits a Family Part judge to dissolve a final restraining order on good cause shown, requires the movant to provide a complete record of the hearing if the dissolution motion is presented

---

[1]  Carfagno v. Carfagno, 288 N.J. Super. 424, 434-35 (Ch. Div. 1995) (holding a court should consider eleven factors in considering an application to dissolve a final restraining order under N.J.S.A. 2C:25-29(d):

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court).

2

to a judge who did not preside over that hearing, as it was here. Defendant, however, could not produce that record because the hearing was improperly recorded.[2] The judge permitted defendant to proceed on the application because both parties were available to testify. See G.M. v. C.V., 453 N.J. Super. 1, 18 (App. Div. 2018) (permitting a judge to conduct a plenary hearing to determine if dissolution of a final restraining order is appropriate in cases where the movant demonstrates the hearing record cannot be transcribed through no fault of the movant). Notwithstanding, the record is sketchy.

The parties were married and had a young son at the time of their divorce in early 2007. That boy is now eighteen. Plaintiff claimed she sought a temporary restraining order alleging harassment and assault in 2006, after defendant "pulled [her] down the driveway" at her parents' house when he came to pick up their son for parenting time. According to plaintiff, defendant was convicted of violating that temporary restraining order when he went to her home and peered through the windows when she refused to answer the door. He was apparently arrested at the scene.

---

[2] Although defendant submitted a form from a transcription firm stating the "tape [was] un[-]transcribable [because] recorded at [the] wrong speed," plaintiff represented she had listened to the tape to refresh her recollection before testifying and only the end of the proceeding "was taped at the wrong speed."

A-1097-20

Plaintiff testified that although she applied for the restraining order based on the incident in the driveway, it was entered "on the basis of harassment." She claimed defendant had presented pictures of injuries to his arm he claimed plaintiff inflicted by grabbing him, but the judge rejected his testimony after the police officer at the scene testified defendant's arm "didn't look like that" after the encounter. She also testified defendant had another criminal conviction involving a forged 401k document submitted in connection with one of their retirement accounts.

Plaintiff testified she opposed the lifting of the restraining order because she feared defendant, the two lived in the same town, and their son, who had always been a flashpoint between them, was living with her while attending college. Plaintiff testified if their son were to do something defendant disapproved of, believing it was influenced by plaintiff, she feared he would "come after [her.]" Asked by the court whether she felt there might come a time in the future when she would not need the protection of the order, plaintiff replied she didn't know.

Defendant testified there were never any issues in returning their son after his parenting time from his perspective, but acknowledged plaintiff "seemed to have concerns," and once called the police. He testified he had no

4

mental health or substance abuse problems, has remarried and has no interest in having any contact with plaintiff.

Defendant admitted his conviction for violating the restraining order, asserting it arose out of the parties' need to co-parent their son. As for the forgery-related offense, defendant claimed he reported that plaintiff had forged his name to a 401k release and drained their bank account. When the judge asked why defendant was convicted if plaintiff had done it, defendant responded that he couldn't afford an attorney and she could, and she "had her attorney turn it back on [him] as if [he] signed [and] handed in forged documents." Defendant claimed his public defender told him he could "plead it down to a misdemeanor or go to jail." Asked what he told the court when it asked whether he was guilty, defendant said he "answered guilty," because he "was scared and penniless at the time" and "[t]hat seemed like [his] only way out."

Defendant claimed the restraining order was affecting his job in the construction industry as a senior estimating manager. He certified "the final restraining order restricts [him] from visiting client's offices, construction sites and accessing certain buildings because [he] will not be cleared by security,"

A-1097-20

and he had been "removed from work projects on a military base" because of the order.

At the hearing, he testified he had previously been blocked by the Department of Defense from a job site and that "it's coming up again with [his] current job." He provided nothing from his employer about the problem, however. When the judge asked whether his criminal conviction for violating the restraining order might not have "much more of an impact upon [his] security clearance than a civil order like a restraining order," defendant replied "they just brought up the restraining order. They weren't that detailed about it." Defendant also testified he and his wife had stopped traveling out of the country because they "can't get through the border because of this," mentioning delays he'd suffered returning from Canada, and Barbados after doing hurricane relief work.

After hearing the testimony and argument by defendant's counsel, the court denied the application on the record after review of the applicable Carfagno factors. The judge found it particularly significant that while the restraining order had been entered many years ago, it was based on a physical altercation between the parties. Although observing it appeared as if the temporary restraining order might be missing a page detailing the predicate

A-1097-20

act, the judge found it involved some "grabbing and pulling" in the driveway, apparently sufficient to support a finding of harassment under N.J.S.A. 2C:33-4(b).

The judge found plaintiff sincere that she feared defendant, not in the sense "that he's going to come over and cause problems for her; but rather, if there wasn't a restraining order, that this is going to result in some new wave of problems," because it had "kept the peace" between the two through the long years of co-parenting their son. And he rejected defendant's contention that plaintiff had acted in bad faith in opposing the order. He noted plaintiff explained her concerns in a reasoned way, finding nothing in plaintiff's manner to suggest "she's being vindictive." The parties' son, although eighteen, was going to be living with plaintiff while attending college, "and she does not want to have problems."

The judge's impression of plaintiff's good faith was reinforced by her candid answer that she didn't know whether there would come a time when she would no longer need the order. The judge found plaintiff's response reasonable, leaving open the possibility there might be less need for the order when their son graduates from college, and "the parties don't have any contact with each other."

A-1097-20

The judge weighed heavily defendant's past conviction for contempt of the restraining order. Turning to defendant's brief testimony about the order affecting his security clearances, the judge noted defendant's "got two criminal convictions on his record." Although defendant testified his employer only mentioned the restraining order when discussing the issue with him and wasn't "that detailed about it," the judge expressed doubt that the existence of the restraining order would figure more prominently than defendant's two criminal convictions in any concern over a security clearance. Balancing the applicable Carfagno factors based on the testimony adduced at the hearing, the judge was satisfied defendant had not carried his burden to show good cause to dissolve the restraining order.

Defendant appeals, contending the "trial court's findings and conclusions are not supported by adequate, substantial, and credible evidence" in the record and that the "court erred when applying the Carfagno factors." He contends there was no support for the finding that the final restraining order was based on a physical altercation, that the court erred in heavily weighting defendant's contempt conviction, and there is "no testimony, document, or any form of evidence" to support the court's conclusion that defendant's criminal record is affecting his inability to secure a security clearance more than the restraining

8

order.  Our review of the record convinces us that none of those arguments is of sufficient merit to warrant any extended discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Our review of a trial court's factual findings, of course, is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998).  Findings by the trial court "are binding on appeal when supported by adequate, substantial, credible evidence."  Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).  Deference is especially appropriate in a case, such as this one, in which the evidence is almost entirely testimonial and involves questions of credibility because the trial court's ability to see and hear the witnesses provides it a better perspective than a reviewing court to judge their veracity.  Id. at 412.

Guided by those standards, defendant has provided us no basis on which we could upset the factual findings or legal conclusions of the trial court.  The evidence supporting plaintiff's claim that the final restraining order was based on a physical altercation was plaintiff's own testimony, which the court found credible, and defendant did not counter at the hearing.  Although defendant claims the temporary restraining order was based only on harassment and did not allege a physical altercation, the temporary order alleged assault and

A-1097-20

harassment and her description of the facts in that order appears to break off mid-sentence, prompting the judge's observation that it appeared to be missing a page. Further, as noted by the judge, a finding of harassment can be based on "subject[ing] another to striking, kicking, shoving, or other offensive touching, or threaten[ing] to do so," if done "with purpose to harass another." N.J.S.A. 2C:33-4(b); see D.N. v. K.M., 429 N.J. Super. 592, 598 (App. Div. 2013).

We find no error in the weight the judge assigned to defendant's contempt conviction, an obviously important factor in determining defendant's motion to dissolve the order. See generally State v. Washington, 319 N.J. Super. 681, 686 (App. Div. 1998) ("An order of a court must be obeyed unless and until a court acts to change or rescind it.") As to defendant's claim that nothing supported the court's supposition that defendant's criminal record is likely to cause him more problems in obtaining a security clearance than a civil domestic violence restraining order, he overlooks that he presented nothing from his employer in support of his claim that the final restraining order was the source of his problem, notwithstanding his burden to establish good cause for dissolving the order. See Kanaszka v. Kunen, 313 N.J. Super. 600, 608 (App. Div. 1998). And when queried specifically about it by the

A-1097-20

court, conceded his employer wasn't "that detailed about it." Nothing prohibited the court from applying common sense and experience in drawing conclusions from the evidence — or its absence — in the record. See State v. Hoffman, 149 N.J. 564, 577 (1997).

In sum, because the court's findings and conclusions that defendant failed to establish good cause for dissolution of the restraining order have adequate support in the record, we affirm. See Pascale v. Pascale, 113 N.J. 20, 33 (1988).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1097-20