# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3446-21

L.V.,

     Plaintiff-Respondent,

v.

R.V.,

     Defendant-Appellant.

_____

> Argued March 20, 2024 – Decided April 11, 2024
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0531-19.
>
> R.V., appellant, argued the cause pro se.
>
> Respondent has not filed a brief.

PER CURIAM

Plaintiff L.V. and defendant R.V. were married for roughly nineteen years, had children together, and divorced in 2020.[1]  On February 28, 2019, the Family Part granted plaintiff a final domestic violence restraining order (FRO) against defendant under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to 35.  On the same day, the court also granted defendant an FRO against plaintiff.[2]

Defendant appeals from a June 23, 2022 Family Part order denying her motion to vacate the FRO against her and an August 22, 2022 order denying her motion for reconsideration.  We affirm.

I.

On February 28, 2019, at the conclusion of a multiday trial on plaintiff's and defendant's cross-complaints for FROs against each other, the Family Part judge made findings of fact and conclusions of law supporting his decision to enter FROs against both parties.  The court found the parties had a "mutually abusive relationship" with a prior history of temporary domestic violence restraining orders against each other, and one prior FRO entered against

---

[1]  We use initials to identify the parties because the names of victims of domestic violence are excluded from public access under Rule 1:38-3(d)(1).

[2]  The record on appeal includes only the February 28, 2019 FRO entered against defendant.

defendant as the result of an incident during which she chased plaintiff while armed with a knife and made holes with the knife in a mattress. The court also accepted as credible plaintiff's testimony that defendant had verbally abused him over the course of their relationship and had been destructive to property during that time.[3]

The court also determined that plaintiff and defendant each had committed the predicate act of harassment against the other by "striking, kicking, shoving, or offensive[ly] touching" each other during a January 1, 2019 incident for which each party sought the FRO against the other. The court further found that during the incident, defendant "scratch[ed]" and threw "things at" plaintiff, causing him injury. The court also concluded defendant acted with a purpose to harass plaintiff.[4]

---

[3] The court accepted defendant's testimony plaintiff had never physically harmed her, but found plaintiff had been verbally abusive to her, physically destructive to property during their relationship, and had given defendant a sexually transmitted disease in 2018.

[4] The court also made findings of fact supporting its determination plaintiff committed the predicate act of harassment against defendant. It is unnecessary to detail those findings because they are not pertinent to our consideration of the order denying defendant's motion to vacate the February 28, 2019 FRO entered against her.

A-3446-21

Additionally, the court determined an FRO against defendant was necessary to protect plaintiff from future acts of domestic violence based on the parties' "[eighteen] or [nineteen] or [twenty] years of dissatisfaction with each other, with regrets about the marriage, with the constant name calling" and "with horrible . . . things being said against one another." The court also cited a prior incident—which resulted in the entry of an FRO against defendant—during which she had used "a knife [and/or scissors] to . . . rip up a mattress and to cut up [plaintiff's] clothes."

Based on those findings, the court entered the February 28, 2019 FRO against defendant. In May 2022, defendant moved to vacate the FRO, arguing there had been a substantial change in circumstances during the three years that had passed following the FRO's entry.

In support of her motion, defendant submitted a certification asserting that following entry of the FRO, she and plaintiff were divorced, they no longer had a nesting parenting time arrangement by which she and plaintiff alternatively had their parenting time with their children in the marital home, the marital home had been sold, and she had undergone counseling for victims of domestic violence. Defendant also asserted she was three years older, had health issues, and no longer felt the anger toward plaintiff that had caused their disputes in the

past. Defendant claimed plaintiff had no reason to fear her and that the court had erred by issuing the FRO against her in the first instance. Defendant averred that the pendency of the FRO made it difficult for her to obtain employment, gain entry to schools, and engage in volunteer work.

In a certification submitted in response to defendant's motion, plaintiff asserted he was "in fear of . . . defendant," she "continues to harass [him]," she has "a mental disorder," and she has "a violent past." Plaintiff also asserted there was a complaint-warrant pending against defendant alleging "violent acts with other persons," and the record on appeal includes a July 20, 2021 order denying the State's motion for pretrial detention on a pending criminal charge (or charges) in a complaint-warrant against defendant and granting defendant's release from pretrial detention on conditions.[5] Those conditions include the requirement defendant have "[n]o [c]ontact with the [v]ictim, directly or in[]directly to include, text, email, telephonic, [and] in-person." The order in the criminal case further provides that defendant's contact with "the remaining children," who are identified as "witnesses" to the charged crime(s), and

---

[5] Although it is not disputed defendant was criminally charged, the record on appeal does not disclose the number of offenses for which she was charged.

defendant's "granddaughter," shall be in accord with any orders issued by the Family Part.[6]

The record on appeal also includes a May 10, 2022 order entered by the Family Part in a Title Nine, N.J.S.A. 9:6-8.21 to -8.73, abuse or neglect case against the parties, continuing physical custody of defendant's children with plaintiff, requiring defendant to undergo psychiatric and psychological evaluations, suspending defendant's parenting time with the children, noting there is a "criminal no contact order for" defendant with one of her children, and requiring that defendant undergo mental health counseling.

On June 23, 2022, the same judge who had issued the 2019 FRO heard argument on defendant's motion. Plaintiff appeared and testified he feared defendant's continuing harassment of him by "calling the police," and "showing up close to where" he lived. He also testified he feared defendant's actions would cause him to lose his job due to the frequency he missed work due to their litigation. Plaintiff testified defendant's conduct "is never going to end until she gets help," and he opposed her request to vacate the FRO.

---

[6] Defendant does not include those Family Part orders in the record on appeal, but it is clear from the record presented that orders were entered in Family Part proceedings under dockets and in proceedings different from those that resulted in the FRO.

Defendant called two witnesses at the hearing on the motion, one of whom testified, in part, that defendant was ineligible to work at the health care facility at which the witness was employed because of "potential criminal charges" against defendant. The other witness testified she had seen defendant interact with her children at their school, she had become friends with defendant, and she thought defendant was an "exemplary person" who provided love and care to her children.

Defendant provided scattered, meandering, and, at times, combative testimony about her request to vacate the FRO. She asserted the New Jersey Division of Child Protection and Permanency (DCPP) had used the parties' domestic violence history against her in the pending abuse or neglect case. She claimed plaintiff, against whom defendant had an FRO, misrepresented the facts in his opposition to her motion. Defendant further made numerous assertions supporting her contention the FRO should not have been entered against her in 2019 and therefore should be vacated.

Defendant also asserted plaintiff was responsible for the pending criminal indictment against her, but the court noted it was a grand jury, and not plaintiff, that "indict[ed] [her] for child abuse . . . and for assaulting a young child." More particularly, the court explained it was the grand jury that "found probable cause

7

to believe that [defendant] had caused severe personal injury to a daughter that was in [defendant's] care." The court further noted that it was DCPP, and not plaintiff, that had filed the pending abuse or neglect complaint against defendant.

The court rejected defendant's claim that there were substantially changed circumstances warranting vacatur of the 2019 FRO. The court noted that such changed circumstances are generally demonstrated by positive developments in a movant's life following entry of an FRO but concluded defendant had not sufficiently demonstrated any changed circumstances such that vacatur was appropriate. The court explained that instead, there had been many negative changed circumstances—including the return of an indictment against defendant for "abusing [her] . . . child" and DCPP's removal of defendant's children from her care based on claims she had abused or neglected them. The court recognized the criminal charges against defendant had not been resolved and she enjoyed the presumption of innocence. The court, however, explained it could not ignore that defendant's changed circumstances—following the issuance of the 2019 FRO—included the return of an indictment against her for child abuse and DCPP's removal of her children from her care.

A-3446-21

The court further reviewed each of the factors set forth in Carfagno v. Carfagno, 288 N.J. Super. 424 (Ch. Div. 1995), pertinent to a determination of a motion to vacate an FRO. The court made findings as to each factor and concluded the factors weighed against defendant's request. The court entered an order denying defendant's motion and this appeal followed.

## II.

Our review of a motion to dissolve an FRO is limited. See G.M. v. C.V., 453 N.J. Super. 1, 11-12 (App. Div. 2018). We review the denial of such a motion without a plenary hearing for an abuse of discretion. Id. at 11. We give "substantial deference" to the trial court's factual findings and legal conclusions in a domestic violence matter, C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020), due to the Family Part's "'special jurisdiction and expertise in family matters,'" G.M., 453 N.J. Super. at 11 (quoting N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010)). We are bound by the trial court's findings if they are "'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference'" and are reviewed de

9                                                              A-3446-21

novo.  Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan

Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

An FRO issued under the PDVA "can be modified or dissolved only by court order upon a showing of good cause."  G.M., 453 N.J. Super. at 12; see also N.J.S.A. 2C:25-29(d).  A party requesting the dissolution of an FRO "has the 'burden to make a prima facie showing [that] good cause exists for dissolution of the [FRO] prior to the judge considering the application for dismissal.'"  G.M., 453 N.J. Super. at 12-13 (first alteration in original) (quoting Kanaszka v. Kunen, 313 N.J. Super. 600, 608 (App. Div. 1998)).  To sustain that burden, the party seeking dissolution of the FRO "must show 'substantial changes in the circumstances' from what existed at the final hearing for the court to 'entertain the application for dismissal.'"  Id. at 13 (quoting Kanaszka, 313 N.J. Super. at 608).

In determining whether a movant has shown good cause, a court must consider the following factors in accordance with the standard established in Carfagno:

> (1) whether  the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement

with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.

[G.M., 453 N.J. Super. at 13 (quoting Carfagno, 388 N.J. Super. at 434-35).]

A court must weigh the Carfagno factors qualitatively, not quantitively, Carfagno, 388 N.J. Super. at 442, and "carefully scrutinize the record and carefully consider the totality of the circumstances" before dissolving a FRO, G.M., 453 N.J. Super. at 14 (quoting Kanaszka, 313 N.J. Super. at 605). To obtain a plenary hearing on a motion to dissolve a FRO, the movant must make a prima facie showing that good cause exists for the requested dissolution and that there "are 'facts in dispute material to a resolution of the motion.'" Id. at 13 (quoting Kanaszka, 313 N.J. Super. at 608).

Defendant's notice of appeal states that she appeals from the FRO entered against her but, in her brief on appeal, defendant does not argue we should reverse the FRO. We therefore do not address her putative appeal from the FRO, see Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal

is deemed abandoned), other than to note the time within which any appeal from the February 28, 2019 FRO may have been taken has long passed, see R. 2:4-1(a) (providing generally that appeals from final judgments or orders "shall be filed within [forty-five] days of their entry"). As such, even if defendant had argued we should reverse the FRO based on a putative attempt to appeal from its entry, we reject the claim because any such appeal is untimely.

Defendant's brief on appeal is otherwise replete with claims that the court erred by entering the FRO in the first instance. Those arguments are made in support of defendant's contention she is entitled to vacatur of the 2019 FRO. That is, one of defendant's primary contentions is that she is entitled to a vacatur of the FRO because the court should have never entered the FRO.

We reject the argument and its many varied iterations in defendant's brief because, as we have explained, defendant did not appeal from the FRO and the time for any proper appeal expired in 2019. As such, we find it unnecessary to address defendant's numerous assertions the court erred by entering the FRO and limit our analysis to defendant's claims related to the only orders from which an appeal was timely taken—the June 23, 2022 order denying her motion to vacate the 2019 FRO and the August 22, 2022 order denying her motion for reconsideration.

As noted, we review an order denying a motion to vacate an FRO for an abuse of discretion. G.M., 453 N.J. Super. at 11. A court abuses its discretion when its "decision [was] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (first alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Measured against this standard, we discern no abuse of discretion in the court's denial of defendant's motion.

Defendant's claim the court erred by finding she failed to establish a substantial change in circumstances warranting vacatur of the FRO is founded on a myriad of contentions that are undermined by, contradicted by, or find no support in the record. Defendant first claims she was "taken aback" by the court's "request[]" that the parties mutually withdraw their respective FROs against each other. The claim is undermined by the record. The court never requested that the parties withdraw their FROs. Instead, at the outset of the hearing on defendant's motion, and based on information included in plaintiff's opposition to defendant's motion, the court inquired only if the parties had considered mutual dismissal of their FROs. When both parties indicated they were not interested in doing so, the court stated, "[t]hat's fine," and proceeded

to address defendant's motion on the merits. Contrary to defendant's claim, the court never requested dismissal of either or both FROs.

Defendant also argues the court ignored that in support of her motion to vacate the FRO, she had asserted that "during her whole life" she had volunteered to work at childcare centers, "girl scouting," with the elderly, with developmentally disabled children, and in other similar capacities. Defendant ignores that those activities did not constitute changed circumstances following the 2019 FRO because, as averred by defendant, she had participated in those activities during her "whole life," and, as such, participated in them during the time she was engaged in the history of domestic violence with plaintiff, including the January 1, 2019 predicate act of domestic violence, that in part provided the basis for the entry of the FRO. Most simply stated, defendant's asserted history of volunteer service had not prevented her from engaging in the acts of domestic violence that supported the entry of the FRO, and her continued involvement in that service following entry of the FRO did not constitute any change in circumstances at all.

Defendant further argues that continuation of the FRO against her is unconstitutional because it is punitive and has resulted in a separation of her from one of her children for "more than a year." The argument is devoid of

14

merit. The FRO does not include require any separation of defendant from any of her children. In contrast, the July 20, 2021 order entered by the Criminal Part granting defendant's release from custody on the pending criminal charge(s) against her includes a "no contact" requirement with one of her children but otherwise permits visitation by defendant with her other children in accordance with Family Part orders issued in matters unrelated to the disposition of the FRO.[7]

Defendant also argues that the court erred by failing to consider that plaintiff and defendant moved on in their lives following entry of the FRO, "are amicably separated and no longer see each other," and she no longer fears plaintiff "or feels any resentment towards him" as grounds supporting vacatur of the FRO. Defendant then incongruously argues plaintiff committed perjury during the FRO trial, made "meritless false allegations," and has misused the FRO as a "weapon" and tool of "oppression" against her in a "manipulative and malicious[]" manner. In other words, defendant argues she is entitled to vacatur of the FRO because she no longer holds any animosity toward plaintiff and then wholly undercuts the claim by offering multiple reasons supporting a finding

---

[7] As previously noted, those Family Part orders are not included in the record on appeal.

she continues to have animosity against him. Moreover, defendant's claims ignore that plaintiff opposed her request to vacate the FRO and the court determined plaintiff credibly testified he continues to fear that plaintiff will commit future acts of domestic violence if the FRO is vacated.

We are therefore convinced the court correctly determined defendant failed to present sufficient evidence establishing a substantial change in circumstances warranting or permitting vacatur of the FRO. We reach that conclusion without regard to the court's finding defendant's post-FRO arrest, the pending criminal charge(s) against her, and DCPP's removal of the children from her care in the pending Title Nine litigation constituted the "antithesis" of a change in circumstances permitting the requested vacatur. We are satisfied that even independent of those circumstances, the court correctly determined defendant failed to sustain her burden of establishing the requisite substantial change in circumstances such that we affirm the court's denial of the motion on that basis alone. G.M., 453 N.J. Super. at 12-13.

In her brief on appeal, defendant mentions the court's consideration of the Carfagno factors but makes no showing the court's findings are not supported by the evidence presented at the hearing, the court failed to correctly apply the law, or the court's weighing of the factors was in error. See Scurry, 193 N.J. at

16

504. Based on our review of the court's findings and weighing of the factors, all of which are supported by substantial evidence the court found credible, we discern no basis to conclude the court abused its discretion by denying defendant's motion and, accordingly, we affirm the court's order.

Because we find no error in the court's order denying defendant's motion to vacate the FRO, it is unnecessary to address defendant's claim the court erred by denying her motion for reconsideration of the order. To the extent we have not expressly addressed any of defendant's remaining arguments, we note that we have considered each and find they are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-3446-21