# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0823-22

C.C.,

    Plaintiff-Respondent,

v.

M.Z.,

    Defendant-Appellant.

_____

Submitted February 13, 2024 – Decided April 3, 2024

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1983-22.

Cobos Law Firm, attorneys for appellant (Franz Cobos, on the brief).

Ambrosio & Associates, Attorneys at Law, LLC, attorneys for respondent (Francois D. Prophete and Elisa C. Ambrosio-Farias, on the brief).

PER CURIAM

Defendant M.Z.[1] appeals from the October 4, 2022 order granting plaintiff C.C. a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We vacate the FRO and remand for further proceedings.

I.

The parties lived together between 2014 and 2022 and share a three-year-old son.  On January 12, 2022, plaintiff obtained a temporary restraining order (TRO) against defendant, alleging he harassed and assaulted her during an argument on January 11, 2022.  Defendant's attorney entered his appearance in the case on January 28, 2022.

On February 18, 2022, the trial court entered a continuance order.  The order stated "all restraints previously ordered in the [TRO]" from January 12, 2022, "continue[d] in full force and effect" pending the final hearing on March 22, 2022.

The court entered another continuance order on March 18, 2022, and conducted a telephonic conference three days later to advise the parties the March 22, 2022 trial date would be adjourned due to the unavailability of a

---

[1] We use initials for the parties to protect their privacy.  See R. 1:38-3(d)(9) and (10).

A-0823-22

Spanish interpreter. Because plaintiff could not be reached by phone that day, the judge left her a message about the adjournment. However, defendant and his attorney participated in the conference call. Defendant's attorney told the judge he was aware the trial was scheduled for March 22, 2022; he also stated he was available to try the case the following month on the date selected by the court. Before the conference call concluded, the judge also advised defendant that if he "violate[d] any restraining order[,] . . . [he could] be arrested and charged with contempt" and that such a charge "carrie[d] up to a maximum of [eighteen] months in state prison." Defendant stated he understood.

On May 5, plaintiff amended her TRO to allege a history of domestic violence between the parties that included terroristic threats, false imprisonment, sexual assault, and criminal sexual contact, N.J.S.A. 2C:25-19(a)(3), (6), (7), and (8). She also amended the TRO to include the predicate act of contempt of a domestic violence order, N.J.S.A. 2C:25-19(a)(17). Later that day, the trial court conducted a telephonic conference call with the parties' attorneys. Because defendant's attorney confirmed he had not yet received the amended complaint and "need[ed] time to defend or respond to [plaintiff's] new allegation," the judge again postponed the trial date.

On June 8, 2022, a judge newly assigned to the matter conducted a status conference with counsel and rescheduled the trial to commence in August. During the conference, the judge confirmed the trial would proceed on plaintiff's alleged predicate acts of "assault [N.J.S.A. 2C:12-1], harassment, [N.J.S.A. 2C:33-4], and contempt of a [domestic violence] order."

The parties and their counsel appeared for trial on August 25, 2022. Before any testimony was elicited, the judge confirmed the TRO initially included allegations "for assault and harassment" but was amended to include a prior history of domestic violence and the predicate act of contempt. Defendant's counsel asked, "[j]ust for housekeeping purposes, when [wa]s the date of service . . . of the [original] restraining order?" Plaintiff's counsel answered he "believe[d] the date [wa]s January 31[, 2022]." The judge asked defendant's attorney, "[i]s [the service date] in dispute?" Defendant's attorney answered, "[w]ell, . . . there[ is] an allegation of contempt . . . . That's why I just want to make sure I get the date clear. . . . I don't think he was served until either the end of January, or early February." The judge stated, "[w]e need to check that, for sure," and defense counsel replied, "[y]eah."

Plaintiff's attorney stated his copy of the TRO showed "service was made on January 31[, 2022,]" and "there should be no dispute that [defendant] was

served on January 31." After he provided a copy of the TRO to the judge reflecting the service date, the judge noted the copy showed defendant was "[s]erved personally [by] Essex County Family Court on January 31[]." She also clarified the date of service was "only an issue with respect to the contempt" allegation.

Next, the judge heard testimony from both parties. Plaintiff testified that on January 11, 2022, defendant was driving her and the parties' then two-year old son when defendant directed plaintiff to "fix the child's car seat," believing "the baby was not properly strapped into his car seat." Plaintiff testified the child was asleep in the back of the car with her, so she told defendant she could not adjust the car seat "because [she] would have to let the seatbelts loose." According to plaintiff, her response angered defendant. When defendant stopped the car at a red light, he exited the vehicle, "pulled [her] out of the car" by her shoulder, "punch[ed her] in the back of the head," and "pushed [her] to drive." Plaintiff stated that she drove for the rest of the trip and "during that whole transition[,] . . . [defendant] was saying offensive words to [her]."

Next, plaintiff described the parties' history of domestic violence, stating defendant was "violent with [her]" "on many occasions." She testified that during one incident in 2013, defendant was angry that she was "laughing with

5

[another] man" at a party they attended, and as they drove home, defendant "grabbed [her] by the hair, and . . . hit [her]," causing her to suffer a bruised lip.

Plaintiff also recalled another incident from 2015 when she "was in bed laying down" and defendant "got home drunk." Plaintiff stated defendant "started insulting [her]," and although she "ignored him," he "grabbed [her] by [her] feet, . . . threw [her] on the floor," and "hit [her]." Plaintiff also stated he "pulled [her] hair" and "kick[ed her] . . . in the stomach."

Next, plaintiff testified defendant was repeatedly sexually violent with her during the relationship. She stated, "on one occasion[,] he tore my dress and . . . forced me to have [sexual] relations with him," adding, "[i]t was always like that, he would force me because if I didn't want to, he would get angry." Further, plaintiff testified, "if I didn't accept and have relations with him, it was worse the next day." She recalled "the last time this happened was . . . December 24[,] of 2021." Plaintiff stated on that date, defendant "got home drunk from work," and although she "said no" to his sexual advances, "he forced [her] to be with him, and then . . . just fell asleep there all drunk."

When asked if defendant contacted her after she obtained the TRO, plaintiff testified defendant sent her text messages "[t]hrough social media" so she "block[ed] him." Further, she stated she "received text messages from

6

[defendant] after January 31, 2022," the date defendant was served. Additionally, plaintiff testified that on March 5, 2022, she received a letter from defendant in a bag full of personal items he dropped off for her at his sister-in-law's home.  Plaintiff read the letter into the record, which stated, in part:

> Hello, [C.C.], I hope that you're well.  I hope . . . that at the court we will be able to speak and we will be able to fix everything.  I miss you and . . . [our son]. . . . I miss him a lot. . . .  I've been going to church constantly. . . .  And I've sworn not to drink for seven years.  I hope that one day you will forgive me for not understanding. . . .  I hope to change, and that God would return you back to me. . . .  I love you, take care of yourself a lot, and I['ll] see you on the 22nd.  I hope that everything is over, and that we are good parents towards [our son].

Although the letter was not dated or signed, plaintiff testified it was in defendant's handwriting.  She also explained why she sought an FRO against defendant, stating:

> I don't feel safe without that order.  On several occasions previously[,] he's come close to my job, he's waited for me, [and has been] out looking for me.  Now, even more so, I just never want to go through that again.  I don't want to have any physical or verbal contact with him.  He's just a violent man . . . .

During defendant's testimony, he denied committing any acts of domestic violence against plaintiff.  However, he admitted sending the letter plaintiff referenced in her testimony.  On cross-examination, defendant stated he sent the

7

letter "in January" 2022. Plaintiff's attorney asked what defendant meant when he referred in the letter to "seeing [plaintiff] on the 22nd." Defendant answered, "[b]ecause I thought that all of this would end on the first court date." This answer led to the following exchange:

> [PLAINTIFF'S ATTORNEY]: And when was the first court date?
>
> [DEFENDANT]: On the 22nd.
>
> [PLAINTIFF'S ATTORNEY]: 22nd of what month?
>
> [DEFENDANT]: I am not sure what month.
>
> [PLAINTIFF'S ATTORNEY]: If I were to tell you that you had a court hearing on March 20, 2022, would that be accurate?
>
> [DEFENDANT]: No. No, I don't remember because the court date . . . varied plenty of times.
>
> [PLAINTIFF'S ATTORNEY]: Okay.
>
> THE COURT: Yeah. . . . [L]et me just put something on the record right now.
>
>      . . . .
>
> This case initiated with [another judge]. We'd have to . . . get all these dates correct, the date [the TRO] was filed, the date it was served, [and] the very first court date that [the prior judge] had . . . .
>
>      . . . .

A-0823-22

I'm trying to leaf through all this information to see what th[e parties'] court dates actually were. If you want to get this right, which I think is important that you do, I think we need to look at that.

[DEFENDANT'S ATTORNEY]: Right. So[,] the letter references the 22nd. It has no month. And counsel just asked a question about March 20th. So[,] I wasn't even involved in this case at any point in time.[2]

[PLAINTIFF'S ATTORNEY]: Neither was I.

[DEFENDANT'S ATTORNEY]: So—okay.

THE COURT: Yeah. Neither was I, so—

[DEFENDANT'S ATTORNEY]: But, I mean, we don't even have consistency on the 22nd or the 20th [regarding] the dates that we're asking about now.

After plaintiff's counsel noted defendant's letter was "being proffered to show . . . [defendant] actually reached out to . . . plaintiff after there was a TRO," the judge acknowledged the parties' court dates were "pretty important." She stated, "[w]e need to know what . . . the dates were, and . . . I should pull up the file right now." Plaintiff's counsel immediately responded, stating, "I'm going to ask the court to take . . . judicial—." The judge interjected, "I can only take

---

[2]  Contrary to defense counsel's statement, the record shows he personally participated in the March 21, 2022 telephonic conference with the court and expressly represented during the conference that he was aware of the March 22, 2022 trial date.

9                                                    A-0823-22

judicial notice o[f] what is actually [in] the record. . . . I'm going to do it right now in front of everybody. Let me just pull up the history of th[e] case. . . . This is really the only way to do it."

Without objection from either attorney and while she remained on the record, the judge promptly accessed the court's records, taking judicial notice of the following:

> [The] TRO was . . . issued on January 12[,] . . . 2022 . . . . That first appearance was initially scheduled for January 19, 2022. It . . . must have been an indefinite TRO, and . . . it was served on January 31[], 2022.
>
> Then[,] . . . on the 19th [of January], there was an indefinite [TRO] entered because . . . defendant had not yet been served. And then it looks like . . . plaintiff again appeared on February 18, 2022. But I don't think . . . defendant . . . appeared.
>
> [On] March 18, 2022, I don't know what [the previous judge] was doing because I can't tell if the parties both appeared or not. These are all continuance orders. No appearance [was made] by either party [on] March 24, 2022.
>
> . . . .
>
> . . . [W]e're not clear on which day we're talking about.

Plaintiff's attorney added that he had "a continuance order dated February 18, 2022, setting a hearing for March 20, [20]22,"[3] to which defendant's counsel replied, "[r]ight. And the letter says 22[nd]." As counsel continued arguing, the judge interceded and stated, "all I know from [defendant's letter] . . . is that he said[,] ['] see you on the 22nd.['] This matter was continued numerous times." Notwithstanding his prior admission to another judge during the March 21, 2022 telephonic conference, defendant's attorney told the trial judge, "[b]ut it was never continued to the 22nd." In response, the judge advised counsel she would "have to go through every single order to see if there were any other[ orders]," and in the interim, counsel could "make whatever arguments [they] want[ed] to make."

Following closing arguments, the judge reserved decision on whether to grant plaintiff an FRO. She told counsel, "I'm going to relisten to this entire trial again . . . . because there's a lot of information here. . . . I need to . . . . listen to it again and compare my notes to the testimony [to] make sure I got it all right."

---

[3] However, the February 18, 2022 continuance order specifically directed the parties to "appear for a hearing on [March 22, 2022] at 1:00 p.m."

A-0823-22

On October 4, 2022, the judge entered an order granting the FRO. In her accompanying oral opinion, the judge stated she "ha[d] some issues with respect to the credibility of both parties." She found "both parties[] . . . indicate[d] there was an argument while they were in the car" on January 11, 2022, but their "stor[ies] differ[ed] . . . as to the critical facts." Additionally, the judge stated she "believe[d] . . . plaintiff had enough of what she perceived as . . . defendant's abuse" and "[t]here [wa]s enough in this record for [the judge] to acknowledge that something was wrong between the parties that bothered . . . plaintiff." But the judge stated she was "just not sure specifically what that was," considering "[p]laintiff's allegations were broad" and "[s]he spoke of years of abuse without pinpointing actual dates."

Next, the judge found "defendant's testimony was equally devoid of specifics," so the parties' proofs were "in equipoise." Accordingly, the judge concluded plaintiff failed to prove defendant assaulted or harassed her on January 11, 2022. Similarly, the judge concluded there was "no persuasive evidence in the record to prove" defendant committed the prior acts of domestic violence alleged in plaintiff's amended complaint.

12

Nonetheless, the judge concluded she "ha[d] . . . plaintiff's testimony, . . . defendant's limited testimony, [and] . . . additional evidence in the record to support plaintiff's allegations . . . . on the contempt charge." The judge found:

> On or about March 5[], 2022, plaintiff picked up an item she needed for work and a toy for the couple's son at the home of [defendant's] sister-in-law . . . . The pickup [was] prearranged. On that day, with those items, . . . plaintiff also picked up an unsigned, undated letter in . . . defendant's handwriting.
>
> . . . [D]efendant acknowledged he wrote it, although his testimony is that he wrote it in January before the first court date in this matter. In the body of the letter, he told . . . plaintiff he missed her and his son. He had been to church and had seen a priest, that he hoped God would bring them together, and that he loved her, in addition to other statements, and concluded with, "I'll see you on the 22nd."

Next, the judge stated:

> [T]his case was transferred to me, and I went back and I checked the entire history of this case on the TRO. . . . But I had to focus on the beginning of the case. And what I found was the following: [t]hat the TRO was filed on January 12[], 2022. . . . [O]ur records indicate . . . defendant was served on January 31[], 2022. I . . . suspect that is incorrect because [his attorney] filed a notice of appearance on January 28[]. That means . . . defendant acknowledged or was served with the TRO before January 28[].
>
> [A f]irst appearance [was] scheduled for January 19[]. Only . . . plaintiff appeared because . . . defendant had not yet apparently been served. There was a

13

continuance order. [The s]econd appearance[ was] February 18[]. [The t]hird appearance[ was on] March 18[]; it was a remote hearing.[4] [The trial] was rescheduled because a Spanish interpreter was needed.

And then there is a date in the TRO of March 22[], 2022. I even went back and listened to [the judge previously assigned to this case] on the record . . . just to confirm and hear the audio of what happened at th[at] prior proceeding. And it was very clear to me that . . . . [t]he trial was scheduled for March 22[], 2022, by virtue of what the judge stated on the record.

Although . . . defendant stated he wrote the letter in January before the court date of the 22nd, there was no court date in January, on January 22nd. . . .

. . . [P]laintiff picked up the letter on March 5[], the one that was written by . . . defendant that referred to the 22nd. It had to have referred to the 22nd of March. Just logically, it makes sense. There is no conclusion other than . . . defendant [being] the one who left the letter and the other items for . . . plaintiff, whom he knew was going to pick them up. They are his words [in the letter]. There was an apology.

By communicating with her[,] when he knew he was prohibited from doing the same[,] is a direct violation of the [TRO] entered in this matter. Accordingly, I find . . . plaintiff . . . met her burden of proof with respect to [the] predicate act of contempt.

---

4 Although a continuance order was entered on March 18, 2022, the "remote hearing" addressing the need to reschedule the parties' March 22, 2022 trial date occurred on March 21, 2022, and defendant, as well as his trial attorney, participated in the March 21 telephonic conference.

14

And therefore, the first prong of <u>Silver v. Silver</u>[5] has been met.

Next, the judge stated she "ha[d] to examine the second [<u>Silver</u>] prong [and] its factors."[6] In considering whether the parties had a "previous history of domestic violence," the judge noted she had not "made any specific findings as to . . . prior acts," but found "plaintiff . . . made some non-specific allegations of a history of abuse." Thus, although the judge concluded "the proof[s were] in equipoise with respect to the testimony of both parties," she "account[ed] for the fact that . . . plaintiff [made] . . . allegations" of a history of domestic violence.

---

5 387 N.J. Super. 112, 114 (App. Div. 2006).

6 By statute, the factors a court should consider when determining whether to grant an FRO include, but are not limited to:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment[,] and physical abuse;
(2) The existence of immediate danger to person or property;
(3) The financial circumstances of the plaintiff and defendant;
(4) The best interests of the victim and any child;
(5) In determining custody and parenting time the protection of the victim's safety; and
(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

A-0823-22

Turning to whether defendant posed a risk of "immediate danger" to plaintiff, the judge stated, "[c]ounsel's closing arguments indicate that . . . plaintiff needs to be free from the relationship, does not want to see . . . defendant, [and] fears . . . defendant does not take the [TRO] seriously." (Emphasis added). Further, the judge found plaintiff raised "allegations . . . defendant . . . continued to try to contact her."

Accordingly, the judge concluded:

> The heart of a finding of contempt is that a defendant feels comfortable enough to ignore even an order of the court, and that the possibility is great . . . defendant will continue to contact . . . plaintiff[,] showing no fear of the court or the consequences that could be imposed by the court. A named victim in a [TRO,] or one who alleges domestic abuse has a basic right to be left alone and not be contacted.

Finally, in addressing the remaining applicable statutory factors, the judge found:

> From looking at the amended [TRO], the parties already have worked out a parenting arrangement and a financial arrangement for support. There is simply no reason for . . . defendant to have had to contact . . . plaintiff, in light of the court's order. And thus, for . . . plaintiff's continued protection a[nd] to prevent her from the continuance of unwanted advances or contact, the granting of a[n FRO] is in her best interest to protect her from further contact and abuse, based on my review of the evidence and the finding[] of a predicate act.

16

> . . . I find . . . plaintiff has met her burden by a preponderance of the evidence in establishing the necessity for a[n FRO] . . . .

## II.

On appeal, defendant argues the judge erred in entering an FRO against him based on the predicate act of contempt because: (1) he did not commit a predicate act of domestic violence; and (2) she failed to consider the second Silver prong.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position "to make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

As such, we will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare,

154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[ the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

When considering whether the entry of an FRO is appropriate, a trial court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. One such predicate act is "contempt of a domestic violence order." N.J.S.A. 2C:25-19(a)(17).[7]

_____

[7] An act of "contempt" under N.J.S.A. 2C:25-19(a)(17) occurs when a person:

If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation

(1) . . . purposely or knowingly violates any provision in an order entered under the provisions of the [PDVA] or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense.

. . . .

(2) In all other cases a person is guilty of a disorderly persons offense if that person knowingly violates an order entered under the provisions of the [PDVA] or an order entered under the provision of a substantially similar statute under the laws of another state or the United States.

[N.J.S.A. 2C:29-9(b)(1) and (2).]

The right of a plaintiff to seek an FRO, based upon a defendant's knowing violation of a TRO, exists independently of whether the defendant's violation is, or can be, the subject of a separate contempt proceeding in an action for violating a restraining order under the court's "FO" docket, pursuant to N.J.S.A. 2C:25-30 and N.J.S.A. 2C:29-9.

19

of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to - 29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

"Under N.J.R.E. 201(b)(4), the [trial] court may, and if proper application pursuant to N.J.R.E. 201(d) is made[,] must, judicially notice the records of the court in which the action is pending . . . ." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 12 on N.J.R.E. 201(b)(4) (2024). "The purpose of judicial notice is to save time and promote judicial economy by precluding the necessity of proving facts that cannot seriously be disputed . . . ." State v. Silva, 394 N.J. Super. 270, 275 (App. Div. 2007).

Further, pursuant to N.J.R.E. 201(e), "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the matter noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." This Rule is consistent with the well-settled principle that "[t]he minimum requirements of due process . . . are notice and the opportunity to be heard." Doe v. Poritz, 142 N.J. 1, 106 (1995).

Guided by these standards, we are constrained to vacate the FRO and remand for further proceedings. The reasons for the remand are two-fold.

We first address the need for a remand based on the judge's post-trial decision to take judicial notice of the Family Part records in the domestic

20

violence action. We reiterate that the judge initially took judicial notice of certain Family Part's records during defendant's cross-examination. She did so on notice to the parties, and at the request of plaintiff's counsel that the judge resolve the attorneys' dispute about whether the parties were previously scheduled for trial on March 22, 2022. Defendant's attorney lodged no objection to the judge taking such judicial notice of the court's own records. Instead, he erroneously advised the court that the parties were not previously scheduled to try the case on March 22, 2022. Under these circumstances, and considering the parties and their counsel were present at trial when the judge took judicial notice of the court's records, we are persuaded she properly exercised her authority under Rule 201(c) and (d) in that instance.

However, we part company with the judge's subsequent decision to take judicial notice of statements made by another judge during the March 21, 2022 conference—relative to the March 22, 2022 trial date—because she took judicial notice of this record without advising counsel in advance, and then failing to afford counsel an opportunity to be heard on what she discovered before granting the FRO. Accordingly, we are compelled to remand this matter for the limited purpose of allowing counsel to be heard regarding "the propriety of [the

judge] taking [such] judicial notice and the nature of the matter noticed." N.J.R.E. 201(f).

The trial judge would not have needed to take judicial notice of the trial court's prior proceedings if counsel correctly apprised the judge of previously scheduled trial dates. Similarly, defense counsel failed to inform the judge that he participated in a telephonic conference with the prior judge handling the matter on March 21, 2022, and explicitly acknowledged on the record that day that he knew the parties were scheduled to proceed to trial on March 22, 2022.

Finally, we are constrained to remand this matter for the judge to revisit her findings under the second Silver prong. In finding defendant posed "an immediate danger" to plaintiff, the judge referenced the "closing argument[]" of plaintiff's counsel, and that her counsel "indicate[d] . . . plaintiff need[ed] to be free from the relationship, d[id] not want to see . . . defendant, [and] fear[ed] . . . defendant d[id] not take the [TRO] seriously." Although the record contains testimony from plaintiff supporting counsel's closing remarks, her attorney's summation is not evidence in the case. Accordingly, we remand this matter for the judge to reconsider her analysis under the second prong of Silver, without reference to the closing remarks of plaintiff's counsel, and to allow her to more fully evaluate the factors listed under N.J.S.A. 2C:25-29(a)(1) to (6). In the

interim, the restraints set forth in the FRO are vacated and the TRO is reinstated. We offer no opinion on the outcome of the remand hearing.

To the extent we have not addressed defendant's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3 (e)(1)(E).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0823-22