# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2569-23

S.V.,[1]

    Plaintiff-Appellant,

v.

R.V.,

    Defendant-Respondent.

_____

Submitted December 10, 2024 – Decided March 7, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1751-24.

The Law Offices of Todd Wilson, LLC, attorney for appellant (Todd Wilson, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Plaintiff S.V. appeals from an order dismissing his complaint against defendant R.V. filed under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Plaintiff argues the Family Part judge erred by failing to amend the complaint to allow the previous history of domestic violence to be considered as predicate acts. Because we determine the trial court misapplied its discretion by failing to amend plaintiff's complaint, we hereby reinstate the temporary restraining order and remand for a new hearing.

I.

On February 16, 2024, plaintiff filed a complaint under the PDVA alleging defendant, his brother, committed acts of domestic violence against him and requested the entry of a temporary restraining order (TRO). The same day, a TRO was entered barring defendant from having any contact with plaintiff and a date was set for a hearing.

In plaintiff's complaint, he requested a final restraining order (FRO) based on harassment arising from predicate acts committed by defendant in February 2024 and in December 2023. His complaint alleged that on February 12, 2024 he was before the Runnemede Borough Municipal Court to defend a criminal harassment complaint instituted by defendant against him. Plaintiff's complaint describes defendant taunting him while in municipal court by attempting to draw

plaintiff's attention to lettering on his shirt.  His complaint stated the municipal court judge ordered he and defendant have no contact for thirty days and, if successfully completed, the complaint would be dismissed.  He also asserted that shortly after the municipal court proceeding concluded, defendant followed plaintiff's car, continued to taunt him by gesturing toward his shirt, and swerved his car toward plaintiff's vehicle in an intimidating fashion. The municipal charges were eventually dismissed based on the parties' fulfillment of the court's thirty-day non-contact condition.

The predicate act section of plaintiff's complaint also alleged defendant had harassed him on another occasion in December 2023, resulting in harassment charges he filed against defendant in the Clark Township Municipal Court.  Like the charges in Runnemede, these were disposed of by a dismissal after the parties fulfilled a period of time with no contact condition.  At that time, plaintiff indicated he had expressed to the municipal court judge his "desire to simply be left alone by defendant."

In addition to the allegations listed in the predicate act section, plaintiff also alleged a prior history of domestic violence committed by defendant in section one of his complaint.  Section one is distinct from the predicate act section, which included plaintiff's asserted allegations of harassment by

3

defendant during and after the municipal court proceeding and in December 2023. In the prior history section plaintiff elaborated on the December 2023 incident referenced in the predicate act section. He alleged defendant sent threatening telephone and Instagram messages threatening to "destroy" plaintiff and his girlfriend and "punch" and sodomize her. Plaintiff also alleged in November 2023, defendant sent a package to him consisting of a burnt pig roasting box, which included a letter containing profane language and threats against plaintiff and his girlfriend. Plaintiff also described a harassing event where defendant allegedly scratched plaintiff's motor vehicle.

On the first date the hearing was listed, the court entered a continuance order rescheduling the FRO hearing to March 15 after defendant indicated that he wished to retain a lawyer. On that date an FRO hearing was conducted. Plaintiff appeared self-represented and defendant was represented by counsel. Plaintiff testified that defendant is his older brother, and they had lived together in the past. Plaintiff stated defendant had been threatening him for over a year prior to the incident in municipal court. Plaintiff testified that there were earlier incidents resulting in "harassment charges" being filed in municipal court, which were later dismissed by "no contact" orders.

A-2569-23

Plaintiff stated that the February 2024 incident occurred during and after an appearance before the Runnemede Municipal Court, where he and defendant were opposing parties. Plaintiff averred that defendant was gesturing to his shirt, which contained some kind of lettering or message targeted toward him. Plaintiff stated after they were escorted out of municipal court, defendant followed him in his vehicle for about a half mile until the entrance to the New Jersey Turnpike. He testified this was not in the direction of defendant's home. Plaintiff stated he observed defendant gesturing to his shirt while following him.

The judge questioned plaintiff about prior incidents of domestic violence. Plaintiff testified that in August 2023, defendant sent a package containing the remains of a destroyed pig roasting box owned by plaintiff and a letter with a picture of defendant destroying the box. The letter, which was admitted into evidence at the hearing, stated:

> You want the rest of your box back. PULL UP!! With your UGLY old ass looking B**CH. You're a P**SY because of what you said on the phone you won't say it to my face. You know better. You know the address. Believe me when I say I won't call the cops. I'll call the EMT. So they can come pick your B**CH A** up. How does it feel living your life being a P***Y A** B**CH! Change your last name cause all you do is bring shame to it. Don't worry one day our paths will cross, and when they do don't turn your back to me and hide that wrinkly B**CH! Your EX brother [R.V.] MR UPS.

A-2569-23

During the hearing, plaintiff also presented a recorded message from defendant which he testified was left for him in November 2023.  The plaintiff identified defendant's voice on the recording.  The message stated

> My b\*\*ch looks like Freddy Krueger, yes, he does.  Yo thank your f\*\*\*ing b\*\*ch p\*\*sy.  You're a p\*\*sy.  You're a f\*\*\*ing snitch.  You ain't sh\*t mother f\*\*\*er.  He was f\*\*\*ing scared of me.  I'm going to wear your mother f\*\*\*ing skin, man.  I'm going to salt the f\*\*\*ing earth and everything you f\*\*\*ing love, a\*\*\*ole.  You're going to see mother f\*\*\*er.  Yo, you're such a p\*\*sy you can't even defend your b\*\*ch.  Look at that sh\*t.  Mocking her like the f\*\*\*ing [indiscernible] looks like is sh\*\*ting.  You're some p\*\*sy, sand bagging.  Yo, two p\*\*sies lay in the same f\*\*\*ing bed.  She probably got the d\*\*k mother f\*\*\*er.  P\*\*sy, can't even defend your b\*\*\*h.  The glizzy he's selling, mother f\*\*\*er.  Yo, yo, how does he feel about, you can't f\*\*\*ing defend her, man.  Fake a\*\* f\*\*\*ing snitch, p\*\*sy.  You're worse that f\*\*\*ing Tacashi [phonetic].  At least that mother f\*\*\*er don't sell glizzies.  F\*\*got.  Yo, you know what a f\*\*k [indiscernible] p\*\*sy.  [Indiscernible] you f\*\*\*ing b\*\*ch, you won't defend your f\*\*\*ing b\*\*ch.  Wait until I see your mother f\*\*\*ing, [indiscernible] just f\*\*\*ing wait.  You threatening me.  I'm going to tell mom.  You little b\*\*ch.

After the message was played for the court, plaintiff stated, "I think that breaks it down to what he has been doing to me."  Plaintiff requested the court to issue an FRO "[b]ecause I'm terrified of the things that he just said on that message.  I think [defendant is] mentally disturbed [in] some way, somehow because who talks like that?"

6

After plaintiff was cross-examined, defendant testified and denied taunting plaintiff in municipal court and following him. Defendant claimed the dispute happened because of "a joke," which resulted in plaintiff threatening he would inform defendant's wife that defendant "was cheating on her." When asked if he left the voice message, defendant claimed that he "[did] not recall at this time" and that his voice and plaintiff's voice "was the same." Thereafter, defendant changed his prior testimony and admitted he left the message and stated "[l]isten, we grew up in the hood and as bad as it's going to sound, what you do in the street, you pay for on the street, you know."

After the parties completed summations, the judge denied plaintiff's request for an FRO, dissolved the TRO and dismissed his complaint. Initially, after finding the court had jurisdiction because the parties had previously resided together, the judge noted that he would have entered an FRO if it "was trying this case on [defendant's letter to plaintiff with the burnt pig roasting box]." The judge found that plaintiff was credible and defendant's "story bordered on nonsensical at some point." The judge explained that he credited plaintiff's account and found he was fearful based on the history of harassment:

> The voice recordation that I heard from November 2023 where every other word is mother f***er and it's directed at the plaintiff and plaintiff's girlfriend, that in and of itself might qualify as the harassment. And all

7

of those things are in evidence. The plaintiff testifies that he's fearful . . . and he's concerned by the teasing, the mocking, the gesturing, being called out and wanting to engage. I believe all that's true.

However, the judge found

Where I have difficulty is with what occurred on February 12[], 2024. The parties were in municipal court to deal with a harassment charge, not a temporary restraining order. How the Court dealt with it is irrelevant to me. Plaintiff testifies there was more mocking, teasing and gesturing in what defendant describes as a crowded courtroom. And then . . . defendant followed him where he had no reasonable basis to follow him because he lived right around the courthouse, and yet he followed the plaintiff for half a mile.

Was he going to a supermarket? Was he going somewhere? I don't know. Plaintiff testifies that he was gesturing with his shirt in the same way that he was gesturing at the courthouse.

. . . .

I'm confident that the defendant perhaps committed harassment in August of 2023 and November of 2023. And if I were trying those predicate acts for those dates, I would have no trouble finding harassment. My problem is this, that on February 12th, I am not sure that sir, you carried your burden to tip the scales on that.

. . . .

It's a very, very close call, I admit that. And it's the kind of thing that the [c]ourt isn't a hundred percent comfortable. And that's why I don't think that it has

8

been proven that he harassed you on that date and that time. As to the following, you might be very right. He may have just been following you to the Turnpike and doing all this business or he could have been driving to go get a car or going to a supermarket and it's easy for you to think the worst because his behavior is the worst. He has not acted like a brother towards you. Whether you have in return, I don't know but that's not before me.

. . . .

So I'm not going to find the predicate act today. But [defendant], I'm here to tell you without question this is one of the closest calls I've ever had. And this is part of your prior history. If as you say, and by the way, the plaintiff testified credibly, I think your story bordered on nonsensical at some point. I couldn't even follow half of it.

But this case turns on what happened on February 12[] in that Runnemede courthouse and that's where it comes up short, nowhere else. I think he checks off all the boxes, everywhere else . . . I wouldn't have trouble finding that a predicate act of domestic violence [i]s indicated. Because there was no purpose for that phone call. There's no purpose for this letter and this ranting and raving and teasing and challenging, even between brothers. There's nothing here that's a joke.

Let me assure you, I didn't find any of this to be humorous, not the phone call, not any of this. This is one of these things have you prevailed on a technicality, yes. And your [lawyer] can explain to you exactly what the nature of that technicality is.

On appeal, plaintiff asserts

9

POINT I

THE TRIAL COURT ERRED AND DENIED [PLAINTIFF] HIS RIGHTS AS A VICTIM UNDER THE PROTECTION OF DOMESTIC VIOLENCE ACT BY FAILING TO AMEND THE COMPLAINT AND TRO.

POINT II

THE TRIAL COURT ERRED BY FINDING THAT [DEFENDANT'S] COURSE OF CONDUCT DID NOT CONSTITUTE HARASSMENT DESPITE CREDITING [PLAINTIFF'S] TESTIMONY AND FINDING THAT THE EARLIER INCIDENTS WERE HARASSMENT.

II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between [parties].'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v.

10

Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D., 207 N.J. at 473 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

## III.

Initially, plaintiff argues, after viewing the allegations contained in the "prior history" section of the complaint and hearing plaintiff's testimony concerning defendant's prior acts of domestic violence, the court should have permitted plaintiff to amend the complaint to clarify the alleged predicate acts. We agree.

We are cognizant of a party's due process rights which forbids the trial court from "convert[ing] a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." H.E.S. v. J.C.S., 175 N.J. 309, 322 (2003); see L.D. v. W.D., 327 N.J. Super. 1, 4 (App. Div. 1999) (explaining that "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint.").

> There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice. It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing.
>
> [Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978) (quotation omitted).]

In J.D., our Court noted that during FRO hearings parties often expand upon the history of domestic abuse alleged in their complaints. 207 N.J. at 479. Trial courts "will attempt to elicit a fuller picture of the circumstances . . . to comply with the statutory command to consider the previous history, if any, of domestic violence between the parties." Id. at 479. Our Court held by eliciting testimony that "allows" the prior history alleged in the complaint "to be expanded," the trial court "permitted an amendment to the complaint and must

proceed accordingly." Id. at 479-80. "[S]ome defendants will know full well the history that plaintiff recites and some parties will be well-prepared regardless of whether the testimony technically expands upon the allegations of the complaint." Id. at 480.

A review of plaintiff's complaint demonstrates, under the predicate act section, he alleged defendant committed harassment against him through a course of alarming conduct, including defendant's February 2024 and December 2023 actions as well as prior threats. Further, plaintiff alleged in the prior history section that defendant committed multiple prior acts of harassment between June 2023 and December 2023. Once it became apparent at the hearing that plaintiff was testifying to an alleged course of harassing conduct partially referenced in the predicate act section, the court should have provided plaintiff the opportunity to amend his complaint. We note the court found defendant's November 2023 message to plaintiff "in and of itself might qualify as the harassment." We further observe the court found "defendant perhaps committed harassment in August of 2023 [by the letter] and November of 2023 [by the voice message]" and if it "were trying those predicate acts for those dates, [it] would have no trouble finding harassment." The prior history section of the

complaint also described a continuing pattern of harassment by defendant beginning in June 2023 through the February 2024 municipal court incident.

We are unable to fully discern from the hearing record whether plaintiff's testimony lined up exactly with the allegations in the prior history section of his complaint to be capable of determining whether sufficient notice was fully and adequately provided to defendant before the hearing. Regardless, rather than amending plaintiff's complaint to include the acts of domestic violence set forth in the prior history portion, the court evaluated these allegations in the context of prior history only, despite finding at least two of the incidents may have qualified as harassment against plaintiff.

We conclude, by not amending the complaint, the court foreclosed plaintiff from the full protection contemplated by the PDVA and denied him due process. We determine there would be no prejudice to defendant had the court exercised its discretion to amend the complaint and thereafter addressed whether an adjournment was necessary for defendant to prepare a defense to the complaint amendments. If the court determined an adjournment was appropriate, the temporary restraints in the TRO would be continued until the final hearing was concluded providing plaintiff with continuing protection and also would have provided defendant with adequate notice and time to prepare

14

his defense. By not proceeding in this manner, we conclude the court misapplied its discretion and foreclosed plaintiff from the full protections contemplated by the PDVA.

Based on these determinations, we reinstate plaintiff's complaint and TRO and remand for a new hearing to determine whether an FRO should be granted after a full consideration of all the alleged acts of domestic violence listed in the complaint. We leave to the trial court's discretion to determine at the hearing or on a pre-hearing basis, whether all, none or a portion of the claimed acts set forth in the prior history section of plaintiff's complaint qualify as predicate acts of domestic violence or whether they should be considered prior history.

Finally, we are constrained to remand to a different judge. Since "the [judge] previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial [judge]." R.L. v. Voytac, 199 N.J. 285, 306 (2009); see also Matter of Guardianship of R., 155 N.J. Super. 186, 195 (App. Div. 1977) (remanding to a different trial judge, where "[t]he judge who heard the matter below ha[d] already engaged in weighing the evidence and ha[d] rendered a conclusion on the credibility of the . . . witnesses").

For the sake of completeness, we address plaintiff's second point on appeal. Plaintiff argues the trial court abused its discretion by not entering a

A-2569-23

FRO based on the alleged acts committed by defendant during and after the municipal court proceeding. He avers defendant's actions at that time were a continuing course of conduct constituting harassment because the court had already found harassment based on the previous history. "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487. Therefore, a judge is required to make specific findings after considering "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404). Because we conclude the record was not fully developed and the court did not make complete findings related to defendant's purpose and the prior history of domestic violence in the context of a continuing course of conduct under N.J.S.A. 2C:33-4(c), we decline to decide this issue and leave this determination to the discretion of the trial court on remand after the development of a full record at the hearing.

Reversed and remanded for a new hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

16