# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1974-23

V.B.,[1]

    Plaintiff-Respondent,

v.

N.F.,

    Defendant-Appellant.

_____

        Submitted February 24, 2025 – Decided March 11, 2025

        Before Judges Sabatino and Jablonski.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1238-24.

        Adinolfi, Roberto, Burick & Molotksy, PA, attorneys for appellant (Thomas A. Roberto and Julie R. Burick, on the briefs).

        Klineburger and Nussey, attorneys for respondent (D. Ryan Nussey and Lisa G. Nolan, on the brief).

---

[1] We use the parties' initials to protect the confidentiality of the alleged victim of domestic violence. R. 1:38-3(d)(10).

PER CURIAM

Defendant appeals from a final restraining order ("FRO") entered against him according to the Prevention of Domestic Violence Act of 1991 ("PDVA"), N.J.S.A. 2C:25-17 to -35, based on the predicate act of harassment. N.J.S.A. 2C:33-4. On appeal, defendant argues the trial court erred by entering the FRO against him because it failed to make proper findings of fact concerning the predicate act of domestic violence, and that it also did not consider whether an FRO was necessary to protect plaintiff from future acts of domestic violence.

We agree and vacate the FRO, reinstate the plaintiff's October 16, 2023, temporary restraining order ("TRO"), and remand to a different judge for a new FRO hearing.

I.

We discern these facts from the trial record. Before their dating relationship deteriorated irreparably, plaintiff and defendant had a daughter, E.F. To co-parent her, the parties negotiated a consent agreement that required, in part, for defendant to pay child support. On October 12, 2023, plaintiff and defendant spoke over the telephone about the parties' shared concerns about the costs of therapy for E.F. On October 16, 2023, plaintiff

A-1974-23

obtained a TRO. The order was based on plaintiff's allegations that defendant harassed her in that single telephone call in violation of N.J.S.A. 2C:33-4. She reported:

> [On October 12, 2023, at 9:30 a.m.], the parties were on the phone discussing therapy for their child. [Plaintiff] wanted to make arrangements to the therapy and [defendant] threatened to take the child away. [Plaintiff] is fearful of the [defendant] doing this since they have threatened to take away the child in the past. The [defendant] has been controlling over [plaintiff] for several years now. The [defendant] won't let the [plaintiff] move or else they will take the child away for that as well. The [defendant] uses their child in common to control and manipulate the [plaintiff] into doing what they say. The [plaintiff] considers this to be harassment at this point. The [plaintiff] wanted to note that they have messages and audio recordings of the [defendant]'s threats. Yesterday, [defendant] threatened to stop child support payments and has done so.

On November 10, 2023, plaintiff expanded her complaint's allegations of prior domestic abuse. Specifically, she reported that in 2019, defendant was verbally aggressive and threatened to kill her after she informed him about a parking ticket. She also reported that defendant threatened to take full custody of their child if he did not get his way and threatened to evict plaintiff from defendant's home. On November 29, 2023, plaintiff further amended her complaint to include allegations of an incident that occurred during a routine

3

medical checkup with E.F.[2] Plaintiff also reported that E.F. recalled that defendant displayed a firearm to her.

The matter was tried on January 22, 2024. Central to the controversy was the October 12 telephone call and the parties' interpretations of the statements made in it. The parties presented conflicting narratives about their prior history of alleged domestic violence. Plaintiff stated that defendant's purported aggressive demeanor and financial threats left her feeling trapped and fearful, while defendant defended his actions as expressions of frustration within the context of their disputes and contended they never became genuine threats or harassment. The court also scrutinized a series of text messages the parties exchanged that illustrated defendant's repeated emphasis on the need to resolve issues surrounding child support and housing.

Despite finding both parties to be credible, the court, nevertheless, issued an FRO because it concluded that there were ongoing issues of financial and emotional control that represented a continuous annoyance to the plaintiff. The trial court also dedicated a substantial portion of its decision to emphasize that a resolution of the financial and custody issues was necessary to alleviate

---

[2] The parties have not supplied the date of this alleged incident and the specific date of it does not appear on the November 29, 2023, amended TRO. Plaintiff only notes that these incidents were "ongoing since 2016."

A-1974-23

the contentious nature of the parties' relationship. Sua sponte, the trial court ordered a custody evaluation, modified the agreed-upon parenting time arrangement, and required both parents to submit financial information.

This appeal followed.

## II.

Our review of an FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Consequently, findings by a court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we do not accord such deference to the court's legal conclusions, which we review de novo. C.C., 463 N.J. Super. at 428-29. Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth

& Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of an FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and plaintiff's lack of fear).

On appeal, defendant claims the trial court did not make adequate findings of fact nor conclusions of law about the predicate act alleged, and did not assess whether an FRO was necessary to protect plaintiff from future acts of domestic violence. We agree.

To issue an FRO, the Family Part must make two separate conclusions. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. Super. at 322. The predicate acts in the PDVA, N.J.S.A.

2C:25-19(a), include harassment as defined in N.J.S.A. 2C:33-4. If plaintiff proves by a preponderance of the evidence harassment occurred, then the first prong of Silver is met. See T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). Here, in a single telephone call, defendant suggested leveraging child support funds for E.F.'s therapy, while plaintiff perceived that suggestion as a threat. Defendant nevertheless clarified his intentions were protective rather than coercive and stressed that his proposal stemmed from concerns about plaintiff's financial stability and living arrangements rather than his desire either to intimidate or to harm her.

Addressing the first prong of Silver, the trial court summarily concluded the predicate act without any analysis of either the law or the facts. A defendant may engage in the predicate act of harassment if, "with purpose to harass another," the defendant "[m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a). "[A]nnoyance or alarm" is understood as conduct that is designed "to disturb, irritate, or bother." J.D., 207 N.J. at 477 (quoting State v. Hoffman, 149 N.J. 564, 580 (1997)). A defendant may also harass another if the defendant "[e]ngages in any other course of alarming

7

conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). Harassment can only occur, however, if a defendant acts with a specific intent, that is, "with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." Ibid. (quoting H.E.S., 175 N.J. at 327). But "that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487. Although a single communication may be sufficient to establish a defendant's liability under the harassment statute, a trial court must, nevertheless, consider "the totality of the circumstances to determine whether the harassment statute has been violated." H.E.S., 175 N.J. at 326 (quoting Cesare, 154 N.J. at 404).

Here, the trial court did not reference the single October 12, 2023 phone call in making its decision, nor did it evaluate the substance of it and the parties' differing expressions of intent. Rather, the trial court relied upon plaintiff's disputed testimony that defendant would threaten to sue for custody of their child or to withhold child support. Additionally, the court focused, almost exclusively, on an alleged breach of the consent agreement in

evaluating whether plaintiff proved a predicate act of domestic violence—even though the agreement was not mentioned in any of the plaintiff's complaints. Because the trial court did not make sufficient findings of fact and conclusions of law to address and to sustain the predicate act of harassment, we remand for a new FRO hearing.

## III.

The trial court also failed to make sufficient findings about the second prong of <u>Silver</u> and, specifically, if plaintiff required an FRO for protection "from future danger or threats of violence." <u>D.M.R.</u>, 467 N.J. Super. at 322; <u>see</u> <u>also</u> <u>Silver</u>, 387 N.J. Super. at 127 ("[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to - 29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."). The commission of one of the acts of domestic violence set forth in N.J.S.A. 2C:25-19(a) does not "automatically . . . warrant the issuance of a domestic violence [restraining] order." <u>Corrente</u> <u>v. Corrente</u>, 281 N.J. Super. 243, 248 (App. Div. 1995). N.J.S.A. 2C:25-29(a) provides "[t]he court shall consider but not be limited to" seven factors, including the previous history of domestic violence between the parties. N.J.S.A. 2C:25-29(a)(1). "[W]hether the victim fears the defendant" is an

additional factor the trial court may consider. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)).

A trial court must consider the totality of the circumstances as to whether an FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also N.J.S.A. 2C:25-29(b) ("[T]he court shall grant any relief necessary to prevent further abuse."); C.C., 463 N.J. Super. at 436. The inquiry requires fact-specific analysis. Silver, 387 N.J. Super. at 127-28 (remanding for further fact-finding). Here, rather than provide analysis of the pertinent standard that governs the issuance of an FRO, the trial court instead observed that further court proceedings would be necessary to assess custody and parenting time. This consideration misses the mark required under the second prong of Silver.

Our court rules specifically require trial courts find facts and state conclusions of law in their decisions. R. 1:7-4(a); Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))). Here, we do not have the benefit of

the trial court's factual findings and legal conclusions. Consequently, we vacate the trial court's judgment and remand for a new hearing.

To the extent we have not addressed any of the defendant's remaining arguments, we determine that they are insufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The FRO dated January 22, 2024, is vacated, the TRO dated October 16, 2023, is reinstated, effective immediately, and this matter is remanded for a new FRO hearing. Because the trial court made credibility determinations, the matter is remanded for a new trial before a different judge. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023). We take no position as to the outcome of that hearing.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division