# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1894-24

C.W.,

    Plaintiff-Respondent,

v.

M.S.,

    Defendant-Appellant.

_____

        Submitted April 23, 2026 – Decided June 3, 2026

        Before Judges Mawla and Marczyk.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1796-25.

        Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

        Respondent has not filed a brief.

PER CURIAM

In this one-sided appeal, defendant M.S.[1] challenges the Family Part's December 19, 2024 final restraining order (FRO) entered against him and in favor of plaintiff C.W. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We vacate the FRO and remand for a new trial for the reasons expressed in this opinion.

I.

We glean the following facts from the record. The parties previously dated for ten years, and they share custody of four minor children. On December 6, 2024, plaintiff obtained a temporary restraining order (TRO) against defendant, alleging harassment. In her complaint, she claimed that on September 29, 2024, when the parties met in a store parking lot to exchange custody of their children, defendant used his car to block her from leaving the lot and attempted to open her locked car doors, while shouting at her through the window and calling her derogatory names. After she managed to pull away, defendant followed "closely behind" her "at a fast rate of speed" before pulling up next to her vehicle, shouting at her again, then driving off.

According to plaintiff, despite her family initially discouraging her from doing so, she eventually reported the encounter to the police in December 2024.

_____

[1] We use initials pursuant to Rule 1:38-3(d)(9) and (10).

A-1894-24

Additionally, plaintiff reported an incident from November 30, 2024, with defendant's current girlfriend. She also alleged the parties had a history of domestic violence, including defendant: calling her names; threatening to beat her on multiple occasions; kicking her in the back; throwing household items at her when she was pregnant in 2017; and making false allegations against her to child protective services in Pennsylvania, where she resides.

Both parties were self-represented at the FRO hearing. Plaintiff recounted the September 29 incident, explaining the parties met in a store parking lot so she could pick up the children from defendant. She testified after the children were in her vehicle, defendant got back into his own car and used it to block her from leaving. He then exited his car and unsuccessfully tried to open her car's front doors before beginning to "shout[] stuff at [her]." She claimed defendant "was really mad because of child support" and wanted her to get the children out of his car rather than doing it himself. Plaintiff recalled leaving after defendant moved his car, but he then started "driving behind [her] . . . at a fast rate of speed" until they reached a red light, at which point "he pulled beside [her] and . . . shouted something, then . . . pulled off."

Plaintiff further testified that on November 30, 2024, defendant sent his new girlfriend "to spy" on her at her business, two hours away from where the

girlfriend lived. She asserted the girlfriend had texted her things such as, "[']you're a bad parent, you're a bad mom, you're being petty, you're not letting him see his kids.[']" Given those incidents, plaintiff did not know "what . . . they [were] going to do [to her] next."

Plaintiff testified she needed a restraining order because defendant threw items, like boots and boxes, at her when she was pregnant in 2017, striking her on the leg but not injuring her. He kicked her in the back in 2016 after she accidentally stepped on his foot. Plaintiff further testified she was afraid of defendant and expressed concern his new girlfriend might want to kill her, claiming defendant's actions were motivated by his desire to obtain custody of the children so he could avoid paying child support.

Defendant denied screaming at plaintiff on September 29. He recalled "kindly" asking plaintiff to get their children out of his car "because [of] what was said in [an earlier child support] conference," stating: "I really didn't want to have to speak with her, I didn't want to have to hand her the baby, I didn't want to have to touch her at all." When asked by the court whether plaintiff's testimony that he had screamed at her after one of their children rolled down a car window was true, defendant answered: "I don't remember that." Rather, he explained, although he drove off after plaintiff had put the children in her car,

4

A-1894-24

he decided he "wanted to have a conversation with her, so [he] came back and . . . got out of the car, [and he] walked over to . . . her car." Defendant testified plaintiff continued to contact him after the September 29 incident, and thus he "d[id]n't feel as though . . . [he was] a danger to her."

Defendant claimed plaintiff sent him an email an hour before the incident, in which she threatened him. The court read the email in the record:

> There's a comment here, when I see you today, I am [going to] smack [the] s[***] out of you. And it says on the bottom, you can put your hands on me any time . . . you want to and the church girl reached out while I was living there and I told her I was in a relationship. . . . She just reached out this morning. So you put your hands on me, you will be in jail and lose your children. That's all I have to say. And it's signed . . . dead ass.

The following colloquy ensued:

> [THE COURT:] Could you explain to me what this threat is about? [The court] do[es]n't see the threat.
>
> [DEFENDANT:] She said when I see you . . . when I see you today, meaning it was 3:03 when she e-mailed me that. I had to go transport . . . the children to the [store] parking lot where we normally meet up.
>
> [THE COURT:] Okay. Now how is this relevant to this case? You didn't file a restraining order against her, she filed against you. How is this relevant to this case?
>
> [DEFENDANT:] Maybe –

5

A-1894-24

THE COURT: All right. Not relevant. [The court will] deny the submission of the document.

Defendant also denied ever assaulting plaintiff. According to defendant, "[t]he matter with the person that went to [plaintiff's] establishment . . . was a business transaction," and "[t]here was no conflict there." He further claimed plaintiff was falsely accusing him of harassment because she found out "the young lady going to her business . . . was connected to [him]."

Following the parties' testimony, the court rendered a brief oral decision. It found defendant "horribly harassed" plaintiff when he "went to her car and . . . screamed at her" after exchanging their children on September 29. Although there had been a past incident "with [defendant's] significant other," the court did not "see a relationship." However, the court found "plaintiff was subject to assaults on prior occasions" and feared defendant. Accordingly, the court entered the FRO.

II.

Our scope of review of Family Part orders is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are

6

'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. See Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We will not disturb a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); N.J.S.A. 2C:25-18. "In adjudicating a domestic violence case, the trial judge has a 'two-fold' task." J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (quoting Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006)). "The judge must first determine whether the plaintiff has proven,

by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a)." Ibid.

When harassment is the alleged predicate act, the court must find not only that the underlying conduct occurred but also that the defendant acted with the "purpose to harass." See J.D., 207 N.J. at 477; State v. Hoffman, 149 N.J. 564, 576-77 (1997). Under N.J.S.A. 2C:33-4, harassment occurs when a person, with purpose to harass another:

> (a)    Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> (b)    Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> (c)    Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Mere awareness or knowledge one's conduct might annoy is not enough. Our Supreme Court has explained "alarm or seriously annoy" under subsection (c) "means 'to weary, worry, trouble[,] or offend.'" J.D., 207 N.J. at 478 (quoting Hoffman, 149 N.J. at 581). Additionally, under subsection (a), "annoyance means to disturb, irritate, or bother." Hoffman, 149 N.J. at 580. Additionally, "purpose" may be inferred from the defendant's actions and the context of the

A-1894-24

parties' relationship, including prior abuse. See Cesare, 154 N.J. at 405; State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

Should a plaintiff prove a predicate act was committed, the second inquiry is whether the judge should enter an FRO "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)([7])." Ibid. (citation reformatted). Those factors are:

> (1)  The previous history of domestic violence between the plaintiff and defendant, including threats, harassment[,] and physical abuse;
>
> (2)  The existence of immediate danger to person or property;
>
> (3)  The financial circumstances of the plaintiff and defendant;
>
> (4)  The best interests of the victim and any child;
>
> (5)  In determining custody and parenting time[,] the protection of the victim's safety;
>
> (6)  The existence of a verifiable order of protection from another jurisdiction; and
>
> (7)  Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with,

A-1894-24

threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights . . . .

[N.J.S.A. 2C:25-29(a)(1)-(7).]

"[W]hether the victim fears the defendant" is an additional factor the trial court may consider. G.M., 453 N.J. Super. at 13 (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)).

A trial court is required to make specific findings of fact and state its conclusions of law. R. 1:7-4(a) (requiring the court in non-jury trials "by an opinion or memorandum decision, either written or oral," to "find the facts and state its conclusions of law"). When a court does not articulate precise findings of fact and conclusions of law to explain its conclusions, it impedes meaningful appellate review. See Gnall, 222 N.J. at 428 ("Failure to make explicit findings and clear statements of reasoning 'constitutes a disservice to the litigants, the attorneys, and the appellate court'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))).

Defendant asserts the trial court failed to make specific credibility determinations and, instead, it "simply" concluded he had harassed and assaulted plaintiff in the past, causing plaintiff to fear him. He contends the court disregarded his testimony without explanation.

A-1894-24

Defendant also argues the trial court erred in finding the predicate act of harassment. He claims, contrary to the court's finding, plaintiff did not testify he got out of his car and screamed at her, but rather, he started "shouting stuff" at her after one of their children rolled down the window. Defendant emphasizes plaintiff did not testify about what he allegedly said, how he said it, or how long the exchange was. Nevertheless, he asserts, even if plaintiff's recitation of the facts were true, her testimony he was "shouting stuff" at her was insufficient for the court to find harassment. Defendant also points out the court failed to identify the subsection of the harassment statute upon which its finding was based. Assuming the court relied on N.J.S.A. 2C:33-4(c), he contends the alleged September 29 conduct was a single incident, and it did not satisfy the definition of harassment.

Additionally, defendant argues the court erred in finding an FRO was necessary for plaintiff's protection because she did not sustain an injury in the prior alleged assaults. He therefore claims she failed to demonstrate the need for an FRO.

Having considered the record and the applicable law, we are constrained to conclude the trial court's findings of fact and conclusions of law were insufficient to enable us to understand how it arrived at its decision. Although

11

it found defendant committed harassment, the court did so without any explanation or meaningful discussion of the parties' testimony or application of the facts to the statute. The court also made no findings regarding whether defendant acted with a "purpose to harass." See J.D., 207 N.J. at 477; Hoffman, 149 N.J. at 580-81. Although the court found defendant was "in fear" of defendant, it neither explained its conclusion nor addressed N.J.S.A. 2C:25-29(a)(1)-(7) to help us understand whether an FRO was necessary "to protect . . . [plaintiff] from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

The court made no credibility findings. Even if we inferred it found plaintiff credible based on its conclusion defendant "horribly harassed" her, the court made no reference to defendant's testimony disputing plaintiff's allegations. It did not address defendant's denial of the alleged harassment or prior assaults, explain why it rejected defendant's version of the September 29 incident, or evaluate the substance of the parties' differing stories.

The court made an inadequate record of its limited evidentiary rulings. When defendant sought to introduce the September 29, 2024 email, the court denied its admission into evidence as irrelevant without permitting defendant an opportunity to explain its relevance.

A-1894-24

For these reasons, we vacate the FRO, reinstate the TRO, and remand the matter for a new trial. On remand, the case should be reassigned to a different judge because although the judge did not make appropriate credibility findings, he did express his opinion on the outcome. R. 1:12-1(d). Lastly, our opinion should in no way be construed as an expression of whether plaintiff should receive an FRO when the matter is re-tried.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1894-24